

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1873-11

### THE STATE OF TEXAS

v.

### CARLOS ESPARZA, Appellee

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

PRICE, J., delivered the opinion of the Court in which WOMACK, JOHNSON, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion in which KEASLER and HERVEY, JJ., joined. HERVEY, J., filed a concurring opinion in which KELLER, P.J., and KEASLER, J., joined. MEYERS, J., filed a dissenting opinion.

### O P I N I O N

Following his arrest for the misdemeanor offense of driving while intoxicated, the appellee filed a motion to suppress "all evidence seized as a result of illegal acts by the state." Specifically, he alleged that his arrest was illegal and that the circumstances under which breath testing for blood-alcohol concentration was conducted rendered the results

illegally obtained for purposes of Article 38.23 of the Texas Code of Criminal Procedure.[1]

At a pretrial hearing on the motion to suppress, the State presented testimony from one of the

arresting officers and then rested. The trial court determined that the appellee's arrest was

legal, but it nevertheless granted the appellee's motion to suppress on the explicit basis that

"[t]he State failed to present any testimony regarding the breath test results[.]" The State

appealed, and the Eighth Court of Appeals reversed the trial court's ruling, holding that the

arrest was legal and that the appellee had failed to establish any illegalities in the way the

breath-test results were obtained.[2] We granted the appellee's petition for discretionary

review to examine his contention that the court of appeals erred in failing to uphold the trial

court's ruling as "correct under any theory of law applicable to the case."[3] We affirm the

court of appeals's judgment.

## FACTS AND PROCEDURAL POSTURE

### In the Trial Court

Having stipulated at the outset of the hearing on the motion to suppress that the

---

[1] See TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

[2] State v. Esparza, 353 S.W.3d 276 (Tex. App.—El Paso 2011).

[3] See Id. at 282 (recognizing that "[a]n appellate court must uphold a trial court ruling that is reasonably supported by the record and is correct under any theory of law applicable to the case").

appellee had been arrested without a warrant, the State proffered as its only witness the arresting officer, Officer Ruben Rivas of the El Paso Police Department.[4] Rivas testified that, on December 6, 2009, he and his patrol partner "rolled up on an accident that just, apparently, looked like it just occurred." The appellee was sitting in the driver's seat of one of the cars with the ignition still on. He admitted that he had been driving and had struck the second car from behind. A passenger from the second car confirmed this to the officers. Rivas detected a strong odor of alcohol on the appellee's breath and person, slurred speech, "red, glossy" eyes, and, when the appellee got out of his car, a "swaying" gait. Because Rivas believed the appellee to be intoxicated, he summoned "a DWI STEP unit" to the scene to conduct field sobriety testing.[5] In its written findings of fact and conclusions of law, which the State requested as the losing party after the trial court granted the appellee's

---

[4]
Having thus stipulated, the State assumed the burden to establish that the arrest was otherwise reasonable for Fourth Amendment purposes. *See*, *e.g.*, *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) ("The initial burden of proof on a motion to suppress evidence on the basis of a Fourth Amendment violation rests with the defendant. The defendant meets this burden by demonstrating that the search occurred without a warrant. Thereafter, the burden shifts to the state to prove the reasonableness of the warrantless search.") (citations omitted).

At the start of the hearing, the prosecutor announced that he had also subpoenaed the "intox supervisor," and had him "on call." But when this unnamed witness failed to appear and did not answer his phone, the prosecutor offered to proceed with Officer's Rivas's testimony while requesting a one-day continuance to produce his missing witness. The trial court did not explicitly rule on the State's request for continuance, simply commenting: "Okay. Let's get started."

[5]
The record does not indicate what the acronym "STEP" stands for; nor does it reveal the results of the field sobriety tests.

motion to suppress,[6] the trial court expressly found that Rivas's initial contact with the appellee was a lawful "encounter," that the odor of alcohol gave Rivas reasonable suspicion to investigate further, and that the addition of further indicia of intoxication supplied probable cause to arrest the appellee for driving while intoxicated. These particular findings and conclusions are not presently in issue.

The trial court also found, however, that "[t]he State failed to present any testimony regarding the breath test results[.]" Without providing a supporting legal basis, the trial court simply declared that, "therefore, those results were suppressed by the Court." From this we think it fair to assume that the trial court did not sustain the appellee's motion to suppress on the basis of his contention that his arrest was illegal. Nor did the trial court sustain the motion to suppress on the discrete basis of certain alleged irregularities in the course of the breath test that the appellee claimed should render the results of that testing illegally obtained and therefore subject to suppression.[7] Instead, it is apparent that the reason that the trial court

---

[6]

*See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (at the request of the losing party in a motion to suppress proceeding, the trial court is required to enter express findings of fact and conclusions of law).

[7]

In his motion to suppress, the appellee had alleged:

5. Because the defendant was illegally detained but not arrested, there was no deemed consent to the taking of a breath specimen under Section 724.011, Tex. Transp. Code Ann. (Vernon). The officers also failed to give the defendant the required statutory warning under Section 724.015, Tex. Transp. Code Ann. (Vernon). Thus the defendant's breath test and the breath alcohol concentration analysis should be suppressed as the defendant's breath was taken in violation of the defendant's

granted the appellee's motion to suppress the breath-test results was simply because the State

failed to produce any evidence at the evidentiary hearing to show the circumstances under

which the breath-test results were obtained.[8]

---

rights. The defendant also did not voluntarily, knowingly, and intelligently consent to the field sobriety test and the breath test.

6. Additionally, the defendant's breath specimen was not taken within a reasonable period of time. Additionally, there is no way to determine if, at the time the defendant took the breath test, his breath alcohol concentration level had peaked or whether it was rising or declining. The defendant took the breath test after the defendant was stopped [so] that there is no way to ascertain what the defendant's breath alcohol concentration was at the time he was stopped for allegedly Driving While Intoxicated.

7. Furthermore, the state did not preserve Defendant's breath specimen. The Intoxilyzer into which the defendant blew a breath specimen had the capability to preserve breath samples to permit independent testing by the defendant. Destruction of the breath specimen denies the defendant the opportunity to discover potentially exculpatory evidence, and the state's actions have thereby violated the defendant's rights to discovery and due process and due course of law under the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Section 19 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure.

[8] At the conclusion of Officer Rivas's testimony, the hearing ended somewhat abruptly:

THE COURT: All right. Call your next witness. Thank you, officer.

[THE PROSECUTOR]: Well, Your Honor, at this point I'm not sure that we need to go any further. We have established now that there was, you know, a valid reason for the encounter with the defendant. They were investigating a car accident. And so we've established, you know, the reason for the stop, basically. We have probable cause for the stop.

Now, at this point, you have enough determination to decide whether or not they had a right to continue. We're pretty much done.

THE COURT: Call your next witness.

**In the Court of Appeals**

On appeal,[9] the State contended that the burden to produce evidence of the circumstances under which the breath-test results were obtained is rightly posited, not with the prosecutor, but with the appellee, who was the proponent of the motion to suppress. That being the case, the trial court abused its discretion to grant the motion to suppress based upon the failure of the State to satisfy a burden of production that does not reside with the State. The court of appeals agreed and, having "found no theory of law applicable to the case that will support the trial court's order suppressing the breath test results[,]" reversed the trial court's order and remanded the cause for further proceedings.[10]

For the first time on appeal, however, the appellee began to argue that there was yet

---

[THE PROSECUTOR]: The point I'm trying to make, Your Honor, is even if you said at this point that it was an illegal arrest, then what does that mean –

THE COURT: Are you going to call a witness or not?

[THE PROSECUTOR]: Well, I'm just asking if you think it's necessary, Your Honor?

THE COURT: Motion's granted.

[THE PROSECUTOR]: Your Honor, I'll call another witness, but I'm trying to make a point –

THE BAILIFF: All rise.

[9]

*See* TEX. CODE CRIM. PROC. art. 44.01(a)(5) (the State may appeal an order granting a motion to suppress evidence).

[10]

*Esparza*, *supra*, at 284-85.

*another* theory of law applicable to the case that would justify the trial court's ruling on his motion to suppress: that the breath-test results could be excluded because the State failed to establish their scientific reliability under Rule 702 of the Texas Rules of Evidence.[11] The court of appeals disagreed, rejecting this as an alternative legal theory because the appellee had not raised it in the trial court—the appellee "never used the words 'reliability' or 'accuracy,' and he never referred to Rule 702."[12] Utilizing language and case law pertaining to principles of procedural default, the court of appeals held that admissibility of the breath-test results as a function of scientific reliability was not a theory of law applicable to the case because the appellee did not raise it at the trial court level by an "objection in plain, unambiguous language, so that both the trial court and the State could understand, without guessing, the specific nature of his objection and then could take, if necessary, appropriate responsive action."[13] Although the appellee claimed that he made a specific objection, the court of appeals did not find any such objection in the record[14]—and neither do we.

In his petition for discretionary review, the appellee argues that the court of appeals erred to require him to have raised his alternative argument at the motion to suppress hearing

---

[11] TEX. R. EVID. 702.

[12] *Esparza*, *supra*, at 282.

[13] *Id*.

[14] *Id*.

before he could invoke it as a theory of law applicable to the case on appeal.  We granted the appellee's petition to take a closer look at his contention that the court of appeals improperly utilized principles of procedural default to determine whether his alternate "legal theory" under Rule 702, even though identified for the first time only on appeal, should nevertheless be regarded as "law applicable to the case."

## ANALYSIS

We have consistently held that a first-tier appellate court should reject an appellant's claim of reversible error on direct appeal so long as the trial court correctly rejected it "on any theory of law applicable to the case," even if the trial court did not purport to rely on that theory.[15]  Professors Dix and Schmolesky call this the *Calloway* rule, after this Court's opinion in *Calloway v. State*.[16]  Under the *Calloway* rule, the prevailing party at the trial court level need not have explicitly raised that alternative theory in the court below to justify the appellate court's rejection of the appellant's claim.[17]  Or, as Professors Dix and Schmolesky

---

[15] George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 53:111 (3rd ed. 2011).

[16] *Id*. at 1108 (citing *Calloway v. State*, 743 S.W.2d 645, 651-52 (Tex. Crim. App. 1988)).

[17] Thus, we think that the court of appeals may have gone too far when it observed:

In the instant case, the "theories of law applicable to the case" are limited to those theories of exclusion that [the appellee] offered to the trial court, because a trial court may properly exclude evidence only insofar as a party precisely and timely requests that it do so.  *See Willover v. State*, 70 S.W.3d 841, 845-46 n.4 (Tex. Crim. App. 2002).

describe it, "an appellee [be it the State or the defendant below] has no obligation to raise a contention in the trial court in order to 'preserve' that contention in some sense for consideration on appeal."[18] The court of appeals in this case eschewed the so-called "*Calloway* rule," however, effectively concluding that Rule 702 of the Rules of Evidence did not constitute a "theory of law applicable to the case"—at least not in the context of a pretrial motion to suppress evidence and attendant hearing, that nowhere even conceivably put the State or trial court on notice that the admissibility of the breath-test results was in question based on a challenge to their scientific reliability.[19] Ultimately, we agree.

At trial, the proponent of scientific evidence is not typically called upon to establish its empirical reliability as a predicate to admission unless and until the opponent of that evidence raises an objection under Rule 702. It is only "[o]nce the party opposing the evidence objects . . . [that] the proponent bears the burden of demonstrating its admissibility."[20] Allocation of the burden with respect to scientific reliability as a function

---

*Esparza*, *supra*, at 282. The *Calloway* rule does not *typically* require an appellee to expressly raise his alternative theory of law in the trial court in order to argue it successfully on appeal. So long as the record is sufficiently well developed to support a correct ruling on an alternate "theory of law applicable to the case," the appellee need not have expressly relied upon it at trial. Nothing in our opinion in *Willover* holds otherwise.

[18]
   George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 56:135, at 461 (3rd ed. 2011).

[19]
   TEX. R. EVID. 702; *Esparza*, *supra*, at 282.

[20]
   *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). *See Shaw v.*

of Rule 702 should be no different in the context of a pretrial motion to suppress than it is

when the issue is raised during the course of trial. Whether at trial or in a pretrial hearing,

the State (as proponent of the breath-test results here) can, of course, be made to satisfy its

burden to demonstrate reliability. But it is not called upon to satisfy that burden unless and

until the appellee (as opponent) has made a specific objection that those test results are

scientifically unreliable or (perhaps) until the trial court, in its capacity as the gatekeeper of

the admissibility of scientific evidence, should *sua sponte* call upon it to do so.[21] In this case,

---

*State*, 329 S.W.3d 645, 656 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, 2 TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 702.7, at 73-74 (3rd ed. 2002).

[21] In his dissenting opinion, Judge Meyers maintains that the appellee "was not required to cite rules of evidence, which do not apply at suppression hearings, in order for the judge to review" the blood test evidence—presumably for scientific reliability under Rule 702. Dissenting Opinion at 2. It is certainly true that we held in *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002), that the Texas Rules of Evidence do not apply in suppression hearings. The Texas Rules of Evidence likewise do not apply at hearings, whether conducted prior to or during trial, to determine the admissibility of scientific evidence as a function of reliability. *Hall v. State*, 297 S.W.3d 294, 297 (Tex. Crim. App. 2009); *id*. at 299 & n.3 (Price, J., concurring) (citing TEXAS RULES OF EVIDENCE 104(a) for the proposition that, because the rules of evidence do not govern the admissibility of evidence at a hearing to determine the admissibility of evidence, Rule 702 does not apply in a hearing to determine whether scientific evidence satisfies *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992)); *Hernandez v. State*, 116 S.W.3d 26, 31 n.11 (Tex. Crim. App. 2003). While we have never directly addressed the question whether a trial judge may challenge the admissibility of scientific evidence *sua sponte*, we have made it clear that, once a challenge has been made, the trial court "may ask questions of the expert witnesses, request more information, ask for additional briefing, or seek clarification concerning the scientific state of the art and reliable sources in the particular field." *Hernandez*, *supra*. But neither the fact that the trial court may take such an active gatekeeping role nor that fact that Rule 702 does not limit the admissibility of evidence in a hearing to determine the admissibility of scientific evidence means that the proponent of that scientific evidence must satisfy his burden to establish the reliability of that evidence *before he is fairly called upon to do so*—either by the opponent of the evidence or by the trial court.

as the court of appeals correctly observed,[22] nothing happened at the trial court level to alert

the State that the scientific reliability of the breath-test evidence, as a function of Rule 702,

was in play at the hearing on the pretrial motion to suppress evidence.[23]

In fact, far from it. The appellee's written motion to suppress exclusively raised

issues of *suppression* of *illegally obtained* evidence, invoking the Fourth Amendment's

exclusionary rule and Article 38.23 of the Texas Code of Criminal Procedure. Nowhere did

it purport to request the trial court to make a pretrial ruling to *exclude* the breath-test results

on the basis of evidentiary *inadmissibility*—or *any* evidentiary basis, much less Rule 702 and

scientific unreliability. No mention was made of *Daubert* or *Kelly*,[24] or any other authority

for holding the breath-test results to be *inadmissible*, as opposed to *suppressible*.[25] Nor did

---

[22]

*Esparza*, *supra*, at 282.

[23]

This is not to suggest that admissibility of evidence under Rule 702 may never be determined in a pretrial setting; on the contrary, we have recognized that it can. *See State v. Medrano*, 67 S.W.3d 892 (Tex. Crim. App. 2002) (State may appeal an adverse pretrial ruling on a "motion to suppress" that seeks to exclude evidence as inadmissible rather than to suppress evidence as illegally obtained). But the appellee said nothing in his written motion to suppress evidence, or during the suppression hearing itself, to put the State or the trial court on notice that he was attempting to challenge the scientific reliability of the breath-test results under Rule 702. *See* note 7, *ante*, and notes 25 & 26, *post*. The State was never alerted that it must satisfy a burden *at the pretrial hearing* to produce evidence sufficient to establish scientific reliability. To affirm the trial court's ruling that granted the appellee's motion to suppress on the basis of a failure by the State to produce evidence under these circumstances is unacceptable.

[24]

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).

[25]

At the outset of his motion to suppress, the appellee "respectfully move[d] this Court to

the appellee say anything at the pretrial hearing that may reasonably be construed to be an invocation of Rule 702 so as to trigger the State's burden of production and persuasion with respect to the scientific reliability of the breath-test results.[26] The trial court did not purport,

---

suppress all evidence seized as a result of illegal acts by the state." The first alleged illegal act was arresting the appellee without reasonable suspicion, probable cause, or a warrant, in violation of the Fourth Amendment and Article I, Section 9 of the Texas Constitution. U.S. CONST. amend. IV; TEX. CONST. art. I, §9. He sought suppression under the federal exclusionary rule and Article 38.23. TEX. CODE CRIM. PROC. art. 38.23. The trial court made express findings of fact and conclusions of law rejecting these contentions, which findings and conclusions are amply borne out by evidence at the suppression hearing. In addition, the appellee claimed that the breath-test results should be suppressed because he did not validly consent under Section 724.011 of the Texas Transportation Code, he was not admonished as required by Section 724.015 of the Transportation Code, and because there were various anomalies that occurred in the course of the administration of the breath test that he claims rendered the results unlawfully obtained, and therefore suppressible—again, under exclusionary-rule principles. TEX. TRANSP. CODE §§ 724.011 & 724.015. *See* note 7, *ante* (quoting the appellee's motion to suppress verbatim). Nowhere did he cite to Rule 702 or otherwise argue that the breath-test evidence was inadmissible because it was the product of unreliable science (nor could he, consistent with this Court's opinion in *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006)), or that the established science was improperly applied.

[26] The closest that the appellee came to questioning the *admissibility* of the breath-test results at the hearing was when he complained at the outset:

> . . . Judge, the State has not provided me a breath test slip in this case. When the test -- there is testimony about the breath test, for extrapolation purposes, I need to know at what time the specimens were provided -- they've got to provide two of them. There's got to be a two-minute delay between the two of them. And they have to put him behind the wheel at the time of driving intoxicated, and within two hours, according to *State versus Mata*, they have to perform the field sobriety test -- I'm sorry, the breath test. Without the breath test slip there's no way for me to know when those tests were done. So they haven't provided that.

This excerpt cannot plausibly be read to challenge admissibility of the breath-test results as a function of scientific reliability under Rule 702. To the extent it might be read more narrowly to be a complaint that the appellee lacked sufficient discovery to be able to tell whether he may have a valid objection to the breath-test results *qua* retrograde extrapolation evidence, we would simply observe, as the court of appeals did, *Esparza*, *supra*, at 283-84, that this Court has repeatedly held that "intoxilyzer results are probative without retrograde extrapolation testimony." *State v. Mechler*, 153 S.W.3d 435, 440

in its written findings of fact and conclusions of law, to *exclude* the testimony as *inadmissible*—again, on *any* basis, much less Rule 702 and scientific unreliability. Instead, the trial court expressly "suppressed" the breath-test results. It did so—again, expressly—simply because "[t]he State failed to present any testimony regarding" those results. But, as the court of appeals has conclusively demonstrated in its opinion below, it was the appellee, not the State, who properly bore the burden with respect to the various issues of suppression under the exclusionary principles he invoked in his motion to suppress.[27] This means that the absence of evidence in the record with respect to the *suppressibility* of the breath-test results can have served only to cause the trial court to *deny* the appellee's motion to suppress—not, under any circumstances, to *grant* it. The trial court had no discretion to rule against the State for failing to satisfy a burden of production and persuasion that should rightfully have fallen upon the appellee.

That is, unless the court of appeals was obligated to affirm the trial court's ruling that explicitly "suppressed" the breath-test results because the trial court *could* have *excluded* those results as scientifically unreliable—even though the trial court manifestly did not do so, and the State was never called upon to present evidence at the pretrial suppression hearing to establish reliability for purposes of Rule 702. But we are not inclined to construe the

---

(Tex. Crim. App. 2005) (citing *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004)).

[27] *Esparza*, *supra*, at 283-84 (citing, *e.g.*, *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *State v. Kelly*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006)).

reliability of the breath-test results as a function of Rule 702 to be a "theory of law applicable to the case" under the present circumstances, for the reasons that follow.

We have explained that the rules of procedural default, such as the contemporaneous objection rule codified in Rule 33.1(a) of the Texas Rules of Appellate Procedure,[28] should apply equally to all appellants, whether defendants or the State.[29]  We have also held that such rules of procedural default do not ordinarily limit appellees, who may argue on appeal that the trial court's ruling should be affirmed so long as it is correct under any theory of law that is applicable to the case, regardless of whether the appellee raised or the trial court actually ruled on that particular basis—the so-called *Calloway* rule.[30]  Under most circumstances, this principle should apply in equal measure when the defendant is the appellee as it does in the more typical case in which the State is the appellee.

But, as Professors Dix and Schmolesky have also appropriately observed, various courts of appeals, and occasionally this Court, have resisted employing the *Calloway* rule when to do so would work a manifest injustice to the appellant.[31]  And we should take a

---

[28] TEX. R. APP. P. 33.1(a).

[29] *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998).

[30] *See* note 16, *ante*.

[31] George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE §§ 53:113-115 (3ʳᵈ ed. 2011).  *See, e.g., State v. Gonzales*, 850 S.W.2d 672, 675 (Tex. App.—San Antonio 1993, pet. ref'd) (court of appeals declined to consider the appellee's alternative legal theories to justify the trial court's erroneous granting of his motion to suppress when "[t]here is

similarly cautious approach in evaluating the claims of all appellants alike, be they

defendants or the State. After all, in *Hailey v. State*,[32] we endeavored to justify the *Calloway*

rule by explaining that

> a trial court's decision will not be reversed on a theory the trial court did not
> have an opportunity to rule upon and upon which the non-appealing party did
> not have an opportunity to develop a complete factual record. These
> considerations are usually not present when an appellate court **affirms** a trial

---

nothing in the record indicating the judge suppressed the blood test evidence based on any of these"
alternative theories); *Sedani v. State*, 848 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref'd) (opinion on reh'g) (illegal arrest for failure to appear when the appellant tore up traffic citations
could not be justified by the State's argument, made for the first time on appeal, the he *could* have been
arrested for littering); *Tamayo v. State*, 924 S.W.2d 213 (Tex. App.—Beaumont 1996, no pet.)
(rejecting the State's alternative legal theory for upholding the trial court's denial of a motion to quash
that it was untimely filed under Article 28.01, § 2, of the Texas Code of Criminal Procedure when the
appellant was given no opportunity to demonstrate good cause for the late filing under that provision);
*Johnson v. State*, 939 S.W.2d 230 (Tex. App.—Waco 1997, pet. ref'd) (court of appeals would not
consider the State's alternative argument for excluding evidence under Rule 403 of the Texas Rules
of Evidence because the trial court was never called upon at trial to balance probativeness of the
evidence against the danger of unfair prejudice); *Nations v. State*, 944 S.W.2d 795, 799 (Tex.
App.—Austin 1997, pet. ref'd) (the State could not rely on alternative rationale for excluding expert
eyewitness identification testimony on the ground of scientific reliability because it did not apprise the
trial court or defense counsel that it was making such a challenge at trial); *Willover v. State*, 38 S.W.3d
672, 674 (Tex. App.—Houston [1st Dist.] 2000), *rev'd on other grounds*, 70 S.W.3d 841 (Tex. Crim.
App. 2002) (declining to consider State's alternative basis for affirming trial court's ruling under Rule
613(a) of the Texas Rules of Evidence because, in the absence of an objection at trial, the appellant
was never given an opportunity to supply the predicate for admissibility under this provision);
*Sunbury v. State*, 88 S.W.3d 229, 235 (Tex. Crim. App. 2002) (refusing to consider State's alternative
basis for affirming trial court's ruling under Rule 403 of the Texas Rules of Evidence because "[t]he
trial judge did not exercise his discretion under Rule 403 and did not weigh probative value against
any Rule 403 counterfactors"). *See also Corbin v. State*, 85 S.W.3d 272, 281 (Tex. Crim. App. 2002)
(Cochran, J., concurring) ("Although an appellate court may uphold a trial court's ruling on any legal
basis or theory supported by the evidence and the applicable law," the Court should not resort to an
alternative legal theory that was not raised and developed factually in the trial court to affirm the trial
court's judgment).

[32]

  87 S.W.3d 118 (Tex. Crim. App. 2002).

court's decision on a legal theory not presented to the trial court.[33]

That these considerations are *usually* not present, however, does not mean they never are. Sometimes appellants can also be deprived of an adequate opportunity "to develop a complete factual record" with respect to an alternative legal theory, and it would be incongruous with our justification in *Hailey* to treat a purported alternative legal theory as truly law "applicable to the case" under those circumstances. If the alternative legal theory that an appellee proffers for the first time on appeal as a basis to affirm a trial court's otherwise faulty judgment turns upon the production of predicate facts by the appellant that he was never fairly called upon to adduce during the course of the proceedings below, then application of the *Calloway* rule to affirm that otherwise faulty judgment works a manifest injustice. An appellee's alternative legal theory should not be considered "law applicable to the case" under these circumstances, and this is so regardless of whether the appellee was the defendant or the State at the trial court level.

Accordingly, we hold that, because the State—appellant though it may have been in this case—was never confronted with the necessity of meeting its burden to establish the scientific reliability of its breath-test results at the hearing on the appellee's pretrial motion to suppress, and for that reason the record was undeveloped with respect to admissibility as a function of scientific reliability, inadmissibility of that evidence under Rule 702 was not

---

[33] *Id*. at 122 (citations omitted).

a "theory of law applicable to the case" that is available to justify the trial court's otherwise erroneous ruling on the appellee's motion to suppress.[34]

## CONCLUSION

On this basis, we affirm the judgment of the court of appeals.

DELIVERED:       October 30, 2013
PUBLISH

---

[34]

In his dissenting opinion, Judge Meyers asserts that we "abandoned" the *Calloway* rule in our recent opinion in *State v. Copeland*, 399 S.W.3d 159 (Tex. Crim. App. 2013). Dissenting Opinion at 1-2, n.1. That opinion, joined by every judge except Judge Meyers, did no such thing, either expressly or implicitly. The only mention of the *Calloway* rule in *Copeland* appears in Judge Meyers's dissent, in the form of an allusion to *Hailey*, *supra*. *Copeland*, *supra*, at 167 (Meyers, J., dissenting).

Neither our holding nor our disposition in *Copeland* remotely implicates the *Calloway* rule. The issue before us was whether the rule announced in *Georgia v. Randolph*, 547 U.S. 103 (2006), which prohibits the search of a residence so long as any tenant who is present withholds consent, applies to the search of a motor vehicle when the driver consents but the defendant, a passenger, does not. *Copeland*, *supra*, at 159-60. Both the trial court and the court of appeals had applied *Randolph* to suppress evidence obtained as a product of such a vehicular search. *Id*. at 161. We reversed the court of appeals, however, holding that it erred to conclude that *Randolph* should apply to motor vehicle searches. *Id*. at 164-66. We then remanded the case to the court of appeals for further proceedings consistent with our opinion. *Id*. at 162, 167. In his dissent, Judge Meyers argued that, even assuming that *Randolph* was inapplicable, the trial court's ruling was correct under this Court's pre-*Randolph* precedents. *Id*. at 167-68 (Meyers, J., dissenting). Judge Meyers apparently believed that, for this reason, we should have invoked the *Calloway* rule and simply affirmed the court of appeals's, and hence the trial court's, judgment on discretionary review. In our capacity as a discretionary review court, however, we review decisions of the courts of appeals. *E.g.*, *Benavidez v. State*, 323 S.W.3d 179, 183 & n.20 (Tex. Crim. App. 2010). Because the court of appeals did not address the applicability of the *Calloway* rule in its opinion on original submission in *Copeland*, we had no occasion to address it on discretionary review. In any event, even assuming that Judge Meyers was right about our pre-*Randolph* consent-to-search jurisprudence, there was nothing to prohibit the court of appeals from relying upon that jurisprudence to affirm the trial court's judgment on remand. This Court's opinion in *Copeland* simply did not speak to that possible disposition—either to endorse or reject it.