COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|   |   |   |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-12-00311-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| ARTURO GONZALEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120C07213) |

## O P I N I O N

The State of Texas appeals the trial court's order granting Arturo Gonzalez's motion to suppress the breath test results. The trial court's findings of fact and conclusions of law reflect that the sole basis for exclusion of the test results is that the State failed to prove that the evidence is reliable under TEX.R.EVID. 702. We reverse.

## FACTUAL SUMMARY

Arturo Gonzalez was charged by information with the misdemeanor offense of driving while intoxicated. Gonzalez filed two motions to suppress evidence. In his first motion to suppress, Gonzalez moved to suppress the breath test results, a police videotape, and any statements he made the night of his arrest on the grounds that his statements were involuntary and coerced, he was deprived of his right to counsel, his statements were tainted by the illegal detention and arrest, and his statements were taken without the safeguards required by Article

38.22 of the Texas Code of Criminal Procedure. In his second motion to suppress, Gonzalez asked the court to suppress all evidence seized as a result of his illegal arrest because: (1) his arrest and search were conducted without a valid warrant, reasonable suspicion or probable cause; (2) all statements made were inadmissible as fruits of the illegal arrest; (3) he did not consent to the breath test; (4) the breath test was not administered within a reasonable period of time; and (5) the State failed to properly preserve the breath specimen. Thus, Gonzalez sought to suppress the evidence under the exclusionary rule due to alleged illegal conduct. His motions to suppress did not address the admissibility of the breath test results under TEX.R.EVID. 702.

At the beginning of the hearing on the motions to suppress, Gonzalez testified that he was arrested on July 7, 2012 for driving while intoxicated. He was unaware of an outstanding warrant for his arrest and he was not presented with a warrant for his arrest. Gonzalez did not present any evidence related to the admissibility of the breath test results under Rule 702.

The State presented the testimony of the arresting law enforcement officer, El Paso Deputy Sheriff Juan Ibarra. On July 7, 2012 at approximately 2:50 a.m., Deputy Ibarra initiated a traffic stop after observing Gonzalez's license plate was not properly illuminated. Deputy Ibarra approached Gonzalez's vehicle and advised him of the reason for the stop. Ibarra immediately noticed "a strong odor of an unknown alcohol beverage" and he observed that Gonzalez's eyes were red and bloodshot and his speech was slurred. Ibarra asked Gonzalez to submit to the standard field sobriety tests (SFSTs) and Gonzalez agreed. At the conclusion of these tests, Ibarra concluded that Gonzalez was intoxicated and placed him under arrest.

Prior to being placed under arrest, Gonzalez told Officer Ibarra that he had consumed approximately three beers. Ibarra requested a breath specimen both before and after Gonzalez was placed under arrest. Gonzalez not only agreed to give a breath sample but was "adamant"

about doing so in order to prove Ibarra wrong. On cross-examination, Ibarra testified that Deputy Robert Rojas administered the breath test.

The State offered the testimony of Deputy Sheriff Robert Rojas to address Gonazlez's assertion raised in his second motion to suppress that the breath test was performed more than two hours after the initial stop, and therefore, the breath specimen was not taken within a reasonable time. Deputy Rojas testified that he is certified to operate the Intoxilyzer 5000 instrument. During his certification training, Deputy Rojas was instructed on how to set-up and use the machine. He is not familiar with the science behind the machine. Deputy Rojas explained that the Intoxilyzer 5000 is programed to detect errors and in those instances it will return an invalid test. He has been trained how to proceed if he gets an invalid test and in all but one instance he is permitted to test again. Rojas provided several examples of the circumstances which yield invalid tests: (1) if the reference sample is out of tolerance; (2) if the subject introduces a breath specimen at the wrong time; (3) if the subject's BAC readings are too high or too low; (4) if a hose is unplugged; and (5) if the solution is too diluted. In each of these situations, a re-test is permitted. There is only one instance when an operator is not permitted to re-test. The Intoxilyzer 5000 will not allow an additional test when an interfering substance or agent is detected on the subject's breath. The first test was administered at 3:57 a.m., approximately one hour and seven minutes after Gonzalez's vehicle was stopped. According to Deputy Rojas, the first time he attempted to test Gonzalez's breath specimen, the Intoxilyzer 5000 returned an invalid test and showed that the "reference was out of tolerance." This was the first time Deputy Rojas had ever encountered this problem. Deputy Rojas visually inspected the machine to make sure it was correctly plugged into the wall and he re-ran the test. The second test returned an invalid test and also showed that the same message: "Reference out of

- 3 -

tolerance." Deputy Rojas physically checked the hoses on the machine to make sure they were properly connected to the back of the machine and the sample. The third test was administered at 4:06 a.m., one hour and sixteen minutes after the initial stop of Gonzalez's vehicle. The Intoxilyzer returned a valid test and showed a reading of 0.120 and 0.119.

On cross-examination, Deputy Rojas was questioned as follows:

Q. [BY DEFENSE COUNSEL]: Are you qualified to test the reliability of the intoxilyzer machine? Yes or no?

*          *          *

A. [DEPUTY ROJAS]: I am qualified to run and operate the machine, sir.

Q. You're not answering my question, Officer. Are you qualified to test the reliability of the intoxilyzer machine?

A. That is not my training. My training is simply to operate the machine.

Q. All right. All right. In this case you tested the intoxilyzer machine to see if it was working properly, did you not, sir?

A. No. I tested the subject, sir.

Q. Who was your intoxilyzer supervisor?

A. Martha Esparza.

Q. Is she here today?

A. I do not know, sir -- Martha Mendoza. I'm sorry about that.

Deputy Rojas was then excused. The court then asked whether the State had any additional witnesses and the State re-called Deputy Ibarra. Deputy Ibarra's testimony on recall was limited to questions regarding the DWI videotape. The videotape was admitted into evidence as State's Exhibit A.

During closing argument, counsel for Gonzalez focused on the two error messages from the Intoxilyzer. He argued that Deputy Rojas was not qualified "to test the reliability of the machine" and the State had failed to offer the testimony of the intoxilyzer supervisor to show that she "had checked the reliability of the machine, had conducted tests on the reliability of the machine."

In his response, the prosecutor argued that the issue of the reliability of the Intoxilyzer had not been raised in either motion to suppress and the issue of the "intox supervisor coming in to testify as to the reliability of the instrument goes to the weight of the evidence in front of the jury, not the admissibility of the evidence in the context of a motion to suppress." The prosecutor went on to address what the State is required to prove when seeking to introduce breath test results at trial:

> What's required for the admission of scientific evidence under Texas Rule 702, in terms of an Intoxilyzer 5000 machine, is that the scientific theory of the underlying instrument must be valid, the technique applying the theory must be valid, and the technique was properly applied, from *Kelly v. State*, 824 S.W.2d 568, Texas Court of Criminal Appeals 1992.
>
> And the Court has held that the first two prongs are met by statute. So all we're talking about here is the final prong, that the technique was properly applied on the occasion in question for the admissibility of the evidence.
>
> At the suppression hearing, the operator of the intox machine testified to his training in operating the machine, testified to the procedures he was taught to follow.
>
> He explained the problem that happened and the procedures he had followed. The procedures he followed was (sic) what he was trained to do. He did those and then got a sample.
>
> Based on his testimony, the technique was properly applied on the occasion.
>
> Now, to introduce the breath slip at trial, we do have to subpoena, put on the stand the supervisor, because to admit the results to the jury for considering whether or not the defendant is intoxicated, at trial there has to be a witness who is qualified to translate and to interpret the breath test sample.
>
> The deputy who operated the machine testified he is not qualified to do that.
>
> But there's no jury here today, Judge.

In front of a jury, Ms. Mendoza can come in and she can explain the underlying scientific theory, and she can explain what the breath test samples of .12 [sic] and .119 mean to a jury, and then they can consider that as evidence that he had an alcohol concentration over .08.

But that has nothing to do with the admissibility of the breath test here as raised in the Motion to Suppress.

After the hearing, the trial court issued an order granting, in part, Gonzalez's motion to suppress the Intoxilyzer test results. The trial court later issued the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. A hearing on Defendant's two Motions to Suppress was held on October 2, 2012. Deputies Ibarra and Rojas from the El Paso Sheriff's Department testified.

2. Deputy Ibarra testified that he conducted a traffic stop because Defendant's vehicle had insufficient illumination on the license plate.

3. That stop led to DWI arrest, which led to the Defendant voluntarily consenting to give a breath test.

4. Deputy Rojas was certified to operate the Intoxilyzer 5000 and he administered the test.

5. That test resulted in a reading of 'invalid test' because of reference sample was out of tolerance.

6. After checking to make sure the machine was properly plugged in (and doing nothing with the reference sample), Deputy Rojas conducted a second test.

7. The second test again resulted in an 'invalid test' reading because the reference sample was out of tolerance.

8. After again re-checking that the machine was properly assembled and plugged in (and again doing nothing to the reference sample) Deputy Rojas administered a third test which then showed BAC levels over the legal limits.

9. Having heard expert testimony about the Intoxilyzer 5000 in multiple cases, the Court takes Judicial Notice of the facts that:

> (1) Reference samples are created and maintained by technical supervisors, not operators;

(2) Reference samples can be compromised through decomposition; and

(3) Therefore, the technical supervisors check or replace the reference solution on each machine on a monthly basis.

10. No technical supervisors testified in this case and no explanation was presented to the Court to explain the readings from the first two tests that the reference sample was out of tolerance.

11. No evidence was presented to show how the machine was operating shortly before or after the three tests in this case.

12. No evidence was presented to show what the status of the reference solution was when the technical supervisor next would have conducted a monthly inspection.

## CONCLUSIONS OF LAW

1. Officer Ibarra had a reasonable suspicion to warrant a traffic stop and the Motion to Suppress on that basis is denied.

2. The State has the burden to show that the Intoxilyzer 5000 was in proper working order and that the test was properly administered. It did not meet that burden. Therefore, the Motion to Suppress the test results is granted.

The State timely filed its notice of appeal.

## SUPPRESSION OF BREATH TEST RESULTS

In its sole issue, the State contends that the trial court erred by suppressing the breath test results due to the State's failure to present the Intoxilyzer technical supervisor's testimony at the suppression hearing to establish that the breath test results were reliable. Citing *State v. Esparza*, 413 S.W.3d 81 (Tex.Crim.App. 2013), the State argues that it had no notice that Gonzalez was moving to suppress the evidence on the ground that the Intoxilyzer test results were inadmissible under TEX.R.EVID. 702.[1] In response, Gonzalez argues that he timely informed the court of his grounds for challenging the reliability of the breath tests results with sufficient specificity.

---

[1] In its original brief, the State initially relied on this Court's opinion in *State v. Esparza*, 353 S.W.3d 276 (Tex.App.--El Paso 2011), but the Court of Criminal Appeals granted the appellee's petition for discretionary review

When reviewing a motion to suppress, we apply a bifurcated standard of review. *See Crain v. State,* 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *Guzman v. State,* 955 S.W.2d 85, 87–91 (Tex.Crim.App. 1997); *Newbrough v. State,* 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). We afford almost total deference to the trial court's findings of historical fact that are supported by the record, and to mixed questions of law and fact that turn on an assessment of a witnesses' credibility or demeanor. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman,* 955 S.W.2d at 89. The trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor are reviewed *de novo. See Valtierra,* 310 S.W.3d at 447; *Amador,* 221 S.W.3d at 673; *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004); *Guzman,* 955 S.W.2d at 89.

When, as here, the trial judge makes express findings of fact, we must first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra,* 310 S.W.3d at 447; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We review a trial court's legal ruling *de novo. State v. Iduarte,* 268 S.W.3d 544, 548–49 (Tex.Crim.App. 2008). Furthermore, we must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. White*, 306 S.W.3d 753, 757 n.10 (Tex.Crim.App. 2010). "This principal holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to admission of evidence." *Esparza*, 353 S.W.3d at 282, *aff'd State v. Esparza*, 413 S.W.3d 81 (Tex.Crim.App. 2013), *quoting Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

---

and issued an opinion affirming our decision on October 30, 2013. The State and Gonzalez filed letters of authority addressing application of the Court of Criminal Appeals' decision in *State v. Esparza* to this appeal.

"The evident purpose of this rule is to ensure that a trial court ruling will be upheld if the appellate court has assurance that the ruling was just and lawful." *Esparza*, 353 S.W.3d at 282, *quoting White*, 306 S.W.3d at 757 n.10.

*Admissibility of Breath Test Results Under Kelly and Rule 702*

Scientific testimony must be both reliable and relevant in helping the jury reach a conclusion in a case. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under *Kelly*, scientific evidence must meet three criteria to be considered sufficiently reliable as to be of help to a jury: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex.Crim.App. 2006). With respect to the scientific analysis of a breath specimen to determine alcohol concentration, the first two criteria are met because the Legislature has already determined that the underlying science is valid and the technique applying it is valid as long as it is administered by individuals certified by and using methods approved by the rules of the Texas Department of Public Safety. *Reynolds*, 204 S.W.3d at 390, *citing* TEX.TRANSP. CODE ANN. § 724.064 (West 2011)(providing that evidence of alcohol concentration, as shown by analysis of a specimen of the person's breath taken at the request of a peace officer, is admissible at trial in a driving while intoxicated case). The trial court is limited to determining the third criteria, namely, whether the technique was properly applied in accordance with DPS rules on the occasion in question. *Reynolds*, 204 S.W.3d at 391.

A breath specimen taken at the request or order of a peace officer must be taken and analyzed under the rules of the DPS by an individual possessing a certificate from the DPS certifying the individual is qualified to perform the analysis. TEX.TRANSP.CODE ANN.

§ 724.016(a)(West 2011). The DPS is granted specific rule-making authority to adopt rules approving satisfactory analytical methods. TEX.TRANSP.CODE ANN. § 724.016(b)(1). Further, the DPS may ascertain the qualifications of an individual to perform the analysis. TEX.TRANSP.CODE ANN. § 724.016(b)(2). Under this authority, the DPS has adopted the breath alcohol testing regulations set forth in Chapter 19 of the Texas Administrative Code. *See* 37 TEX.ADMIN. CODE §§ 19.1-19.7 (2014). As long as the operator is certified by DPS, knows the protocol involved in administering the test, and testifies that it was followed on the occasion in question, it is not necessary to demonstrate any personal familiarity with the underlying science and technology. *Reynolds*, 204 S.W.3d at 390-91.

### Pre-Kelly Predicate for Admissibility of Breath Test Results

In *Harrell v. State*, the Court of Criminal Appeals established the predicate for intoxilyzer test results, holding that the State must establish: (1) that the machine functioned properly on the day of the test as evidenced by a reference sample having been run through it; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory behind it; and (3) proof of the results of the test by a witness or witnesses qualified to translate and interpret such results. *Harrell v. State*, 725 S.W.2d 208, 209-10 (Tex.Crim.App. 1986). If the State lays the predicate required by *Harrell*, it also satisfies the third element of *Kelly* as it applies to an intoxilyzer test result. *Henderson v. State*, 14 S.W.3d 409, 411-12 (Tex.App.--Austin 2000, no pet.).

### Judicial Notice

Before addressing the State's primary argument regarding lack of notice, we will consider whether the trial court erred by taking judicial notice of evidence presented in other cases to establish what proof the State was required to introduce in order to establish the breath

test results are reliable. Texas Rule of Evidence 201(b) provides that a court may judicially notice an adjudicative fact not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R.EVID. 201(b). The facts described by Rule 201(b)(1) are known as "notorious facts," and the facts described by Rule 201(b)(2) are known as "verifiably certain facts." *Tranter v. Duemling*, 129 S.W.3d 257, 262 (Tex.App.--El Paso 2004, no pet.), *quoting Cathy Cochran, Texas Rules of Evidence Handbook* 138-41 (5th ed. 2003).[2]

While the expert testimony judicially noticed by the trial court may be well known to the court, the testimony is not "notorious" or generally known within the court's jurisdiction, and therefore, the testimony is not subject to judicial notice under Rule 201(b)(1). Rule 201(b)(2) also permits a court to take judicial notice of facts which can be readily verified. *See e.g., Office of Public Utility Counsel v. Public Utility Commission of Texas*, 878 S.W.2d 598, 600 (Tex. 1994)(holding that court of appeals erred in failing to take judicial notice of PUC ratemaking order affirmed by trial court); *Pettus v. Pettus*, 237 S.W.3d 405, 423 (Tex.App.--Fort Worth 2007, pet. denied)(appellate court may take judicial notice of published post-judgment interest rate).

We conclude that the trial court erred by taking judicial notice of expert testimony offered in other cases to determine what the State must show when establishing the scientific reliability of the breath test results. The requirements for admissibility are established by pertinent case law and the regulations enacted by the DPS.

---

[2] It is appropriate to consider civil cases interpreting the Texas Rules of Evidence. *See McQuarrie v. State*, 380 S.W.3d 145, 152 (Tex.Crim.App. 2012)(considering civil cases interpreting former Rules of Civil Evidence as persuasive authority for interpreting Rules of Evidence in criminal case).

The trial court suppressed the breath test results because the State failed to introduce sufficient evidence at the suppression hearing to show that the Intoxilyzer 5000 functioned properly on the day of the test.  The State argues that it did not have notice until Gonzalez made his closing argument that he was seeking to suppress the breath test results on this ground, and therefore, it did not have the burden in the suppression hearing to introduce any evidence showing that the machine was working properly on the day of the test.  Gonzalez concedes that he did not raise this ground in either motion to suppress, but he asserts that the State introduced the evidence showing two invalid tests were returned and he timely raised the ground for suppression through his cross-examination and closing argument.

The Court of Criminal Appeals observed in *State v. Esparza* that the proponent of scientific evidence is not required to establish its empirical reliability as a predicate to admission unless and until the opponent of the evidence has made a specific objection that those test results are scientifically unreliable under Texas Rule of Evidence 702, or the trial court, in its capacity as the gatekeeper of the admissibility of scientific evidence, *sua sponte* calls upon the State to do so.  *State v. Esparza*, 413 S.W.3d at 86.  The Court held that the burden with respect to scientific reliability as a function of Rule 702 is no different in the context of a pretrial motion to suppress than it is when the issue is raised during trial.  *Id.*  Thus, the State, as the proponent of the breath test results, can be made to satisfy its burden to demonstrate reliability in a suppression hearing. *Id.*; *but see Hall v. State*, 297 S.W.3d 294, 297 (Tex.Crim.App.  2009)(holding that Rule 702 and *Kelly* requirements do not apply at a suppression hearing; thus, the trial court was not required, at hearing on suppression motion challenging probable cause for stop that resulted in DWI arrest, to conduct a *Kelly* gatekeeping hearing to determine reliability, under rule governing admission of

scientific evidence, of Light Detection and Ranging (LIDAR) technology which provided sole basis for stopping defendant for speeding).

The Court of Criminal Appeals makes clear in *State v. Esparza* that either the trial court or the defendant must alert the State "that the scientific reliability of the breath-test evidence, as a function of Rule 702, was in play at the hearing on the pretrial motion to suppress evidence." *State v. Esparza*, 413 S.W3d at 87. The trial judge did not make any statements during the hearing to indicate that he was calling upon the State to establish that the Intoxilyzer 5000 was working properly at the time Gonzalez's breath specimen was tested.

The remaining question is whether Gonzalez alerted the State that the scientific reliability of the breath-test evidence was "in play" at the suppression hearing. We agree with the State that Gonzalez's motions to suppress gave no indication that he intended to argue that the breath test results should be suppressed because they were scientifically unreliable. Gonzalez argues that the State first raised the issue by introducing evidence that the Intoxilyzer returned two invalid tests before it returned a valid test on the third attempt. This argument is unpersuasive. As noted above, the proponent of scientific evidence is not required to establish its empirical reliability as a predicate to admission *unless and until* the opponent of the evidence has made a specific objection that those test results are scientifically unreliable under Texas Rule of Evidence 702. *State v. Esparza*, 413 S.W.3d at 86. Thus, the State did not assume or place the burden on itself to establish the scientific reliability of the breath test evidence by introducing the certified intoxilyzer operator's testimony in response to Gonzalez's claim in the second motion to suppress that the breath test was performed more than two hours after the initial stop.

Gonzalez also directs our attention to his cross-examination of Deputy Rojas and argues that this was sufficient to make the trial court and the State aware he was challenging the

reliability of the breath test results. Unlike what occurred in *State v. Esparza* where the defendant raised his reliability argument for the first time on appeal, Gonzalez briefly cross-examined Deputy Rojas regarding whether he was certified or qualified to test the reliability of the Intoxilyzer 5000. We decline to hold, however, that cross-examination can constitute a specific objection that breath test results are scientifically unreliable under Texas Rule of Evidence 702. Even if cross-examination could be construed as an objection, the questions asked by counsel here were not sufficiently specific to alert the trial court and the State that Gonzalez was requesting a Rule 702-*Kelly* gatekeeping hearing.

Gonzalez addressed the scientific reliability requirement during his argument at the conclusion of the suppression hearing. The prosecutor certainly understood the import of Gonzalez's closing argument because he argued at length why he believed the State was not required to introduce the Intoxilyzer supervisor's testimony in a suppression hearing. We conclude that Gonzalez's argument "fairly called upon" the State to satisfy its burden to establish the reliability of the scientific evidence. *See State v. Esparza*, 413 S.W.3d at 86 n.21.

The State argued at the conclusion of the suppression hearing that Gonzalez's motions to suppress did not raise the scientific reliability ground and it argues on appeal it was not given an opportunity to present evidence showing the breath tests results are scientifically reliable. Given that Gonzalez had not filed a separate motion for a Rule 702-*Kelly* hearing and he had not raised the reliability issue in his motions to suppress, it is certainly understandable that the State did not anticipate it would be required to introduce the testimony of the Intoxilyzer technical supervisor at this hearing.[3] The State specifically objected to a lack of notice that reliability would be an issue at the suppression hearing and the prosecutor represented to the court that the State would

---

[3] The clerk's record includes the subpoenas issued for Deputies Ibarra and Rojas but it does not include a subpoena for the technical supervisor. Further, the record does not reflect that the witness was present at the hearing.

introduce the Intoxilyzer supervisor's testimony at trial to establish reliability. The trial judge gave the State no indication that he was immediately proceeding with a Rule 702-*Kelly* hearing or that he expected the State to introduce the witness's testimony at that hearing rather than at a later date. If the trial court had notified the parties that he intended to proceed with the Rule 702-*Kelly* hearing, the State could have asked for a brief recess or continuance of the suppression hearing in order to obtain the presence of the witness. That is not the case here. Under the facts presented, we conclude that the trial court abused its discretion by suppressing the breath test results. Issue One is sustained. We reverse the trial court's order suppressing the breath test results and remand the cause for further proceedings consistent with this opinion.

October 8, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

(Do Not Publish)