

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00154-CR
_____

DAVID CARRILLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2015-406,365, Honorable John J. "Trey" McClendon III, Presiding

November 13, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant David Carrillo was charged with capital murder for the shooting deaths of Jennifer Cruz and Albert Martinez during the same criminal transaction. The State did not seek the death penalty. A jury found appellant guilty as charged, and the trial court sentenced him to life in prison without the possibility of parole. On appeal, he asserts four issues which include a challenge to the sufficiency of the evidence that he had the requisite mental state to commit murder, error regarding the admission of evidence allegedly more prejudicial than probative, and the omission of an instruction on self-defense. We affirm.

*Issue One – Sufficiency of the Evidence*

Appellant first argues the evidence was insufficient to prove he manifested the requisite mental state to murder Cruz and Martinez, that mens rea being the intent to intentionally or knowingly cause the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2019) (so describing the mens rea of murder). We overrule the issue.

To determine whether sufficient evidence supports a criminal conviction, a reviewing court must ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)) (emphasis in original). A court defers to the responsibility of the fact-finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard applies equally to both circumstantial and direct evidence. *Id.* Regarding circumstantial evidence, it is as probative as direct evidence in establishing guilt and may alone be sufficient to prove guilt. *Ramsey v. State,* 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

We further note that a firearm is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2018). Using a deadly weapon in a deadly fashion allows an inference that the defendant intended to kill. *Staley v. State*, 887 S.W.2d 885, 889 (Tex. Crim. App. 1994); *Dronso v. State*, No. 02-10-00192-CR, 2012 Tex. App. LEXIS 3720, at *9-10 (Tex. App.—Fort Worth May 10, 2012, pet. ref'd) (mem. op., not designated for publication). Appellant did that; he used a deadly weapon in a deadly way by shooting his ex-girlfriend (Cruz) and her then-boyfriend (Martinez). According to the evidence of

record, so too had he 1) told Trevino (a person who had a prior relationship with Cruz) he had a ".40 cal flame thrower on [his] hip" during the time Trevino dated Cruz, 2) threatened Torrez (another male who had a relationship with Cruz) to stay away from her or something bad would happen, 3) spoke to his co-workers about problems with Cruz's new boyfriend the day before the shooting, 4) asked a third party to acquire a silencer for him, 5) spoke to Sustaita (appellant's girlfriend) about shooting and killing people in general, 6) mentioned to her that such was what he wanted to do to his "ex and her boyfriend," 7) told her he would put everything to rest if he had a silencer, 8) went to Cruz's house between 12:00 a.m. and 4:00 a.m. with a handgun purportedly to scare them, 9) entered the house through a window, 10) found his targets in the bedroom, 11) exhibited the handgun to them, 12) shot Martinez once in the head or neck, 13) shot Cruz four times and struck her head and torso, 14) left, 15) afterwards told his girlfriend to tell others that he was with her the entire night, and 16) eventually claimed self-defense. Applying the requisite standard of review to the aforementioned evidence, we find the jury could have reasonably inferred from it, beyond a reasonable doubt, that appellant acted intentionally or knowingly when he caused the deaths of Cruz and Martinez.

*Issue Two – Admission of Text Message*

Appellant argues in his second issue that the trial court abused its discretion when it admitted the threatening text message he sent to Trevino almost two years before the deaths. The danger of unfair prejudice substantially outweighed its probative value, he posits. So, the evidence was inadmissible under Texas Rule of Evidence 403. We overrule the issue.

Appellant did not assert below the ground for excluding the evidence now urged on appeal. Therefore, it was not preserved for review. *Morgan v. State*, No. 07-16-00170-

3

CR, 2017 Tex. App. LEXIS 2318, at *5 (Tex. App.—Amarillo Mar. 16, 2017, no pet.) (mem. op., not designated for publication).

*Issue Three – Admission of 9-1-1 Recording*

In his third issue, appellant contends that the trial court erred in admitting the recording of Cruz's 9-1-1 call. It too was inadmissible under Rule 403, according to him. We overrule the issue.

The applicable standard of review is abused discretion. *Nieto v. State,* No. 07-11-00290-CR, 2013 Tex. App. LEXIS 8184, at *4 (Tex. App.—Amarillo July 3, 2013, no pet.) (mem. op., not designated for publication). Under it, we do not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *Ryder v. State*, 514 S.W.3d 391, 398 (Tex. App.—Amarillo 2017, pet. ref'd). Additionally, error in a trial court's Rule 403 determination is rare given that the trial court is in a superior position to gauge the impact of the evidence and to balance the relevant factors. *Freeman v. State,* No. 07-11-0407-CR, 2012 Tex. App. LEXIS 6996, at *10 (Tex. App.—Amarillo Aug. 20, 2012, pet. ref'd) (mem. op., not designated for publication). Those relevant factors normally consist of 1) the probative value of the evidence; 2) its potential to impress the jury in some irrational and indelible way; 3) the time spent developing the evidence; and 4) the need for the evidence. *Hernandez v. State,* 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Finally, there is a presumption that relevant evidence is more probative than prejudicial. *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

In the case at bar, a female voice in the recording can be heard referring to David and David being the one with the gun. Appellant's first name is David. So, it is relevant to proving the shooter's identity. And, in hearing the speaker plead for her life, it can also

4

be interpreted as evidence indicating that appellant was the aggressor as opposed to someone being attacked; that would tend to negate his later claim of self-defense.

As for its impact, it can leave an impression on a juror. Yet, the picture painted here by the recording is no more impressionable than being shown threatening texts from appellant, hearing appellant's girlfriend reveal his desire to eliminate his problems if he only had a silencer for his gun, hear appellant's own words describing what he did, and seeing pictures of his dead victims. Moreover, portions of the recording that may have contained more impressionable noises, like moaning, were not played.

As for the time spent developing the evidence, appellant did not discuss that factor in depth. Yet, presentation of the 9-1-1 recording took little time before the jury when compared to the remainder of the State's evidence. And, the recording itself was only some five minutes in duration.

Given our balancing of the aforementioned criteria, we cannot say that concluding the probative value of the 9-1-1 call was not substantially outweighed by its potential for unfair prejudice fell outside the zone of reasonable disagreement. Consequently, the trial court did not abuse its discretion in admitting it.

*Issue Four – Self-Defense Instruction*

In his fourth issue, appellant argues the trial court abused its discretion by refusing to submit his requested instruction on self-defense. We overrule the issue.

The standard of review is again abused discretion. *See Ortega v. State,* No. 11-17-00036-CR, 2019 Tex. App. LEXIS 660, at *11 (Tex. App.—Eastland Jan. 31, 2019, pet. ref'd) (mem. op., not designated for publication). Given that standard, we must affirm the trial court's ruling if it was reasonably supported by the record and was correct under

5

any theory of law applicable to the case. *State v. Esparza,* 413 S.W.3d 81, 83 n.3 (Tex. Crim. App. 2013).

Next, statute provides that a person is justified in using deadly force against another when, among other things, the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(1), (2)(A). There is evidence of record that Martinez may have sometime or another told appellant he had a gun and did not fear appellant. There is also evidence that Martinez may have left the bed and "came at" appellant upon discovering that appellant had surreptitiously entered the house and bedroom without invitation and during the wee morning hours. Yet, there was no evidence that Martinez brandished a firearm before being shot. Nor was a firearm discovered at the scene. Nor is there evidence that Martinez, or anyone other than appellant, brandished any type of deadly weapon. This is of import given *Carsner v. State*, No. 08-11-00326-CR, 2018 Tex. App. LEXIS 4400 (Tex. App.—El Paso June 15, 2018, pet. dism'd) (mem. op., not designated for publication).

In *Carsner,* the court found that the appellant was not entitled to a self-defense instruction because the evidence did not show "the victims were using or attempting to use deadly force against her." This was even so when the appellant testified that her stepfather was "rushing" her. *Id*. at *31. The court reasoned that because there was no evidence that the stepfather had a weapon or that he was "approaching her in an attempt to use deadly force against her," then no evidence existed that warranted self-defense or an instruction on same. The situation is no different here.

Moreover, we hesitate to say that a home intruder 1) appearing with a firearm, 2) while the inhabitants slept, 3) with the intent to kill the inhabitants has the right to defend

himself when one of the inhabitants opts to thwart the attack. Just as a person committing robbery generally has no right of self-defense, *Gorman v. State*, Nos. 04-03-00311-CR, 04-03-00312-CR, 2004 Tex. App. LEXIS 11921, at *2 (Tex. App.—San Antonio Nov. 3, 2004, pet. ref'd) (mem. op., not designated for publication); *Dillard v. State,* 931 S.W.2d 689, 697 (Tex. App.—Dallas 1996, pet. ref'd, untimely filed), a home intruder bent on harm and brandishing a deadly weapon should also lack the right to claim self-defense when his intended target fights back. This is not a situation where the evidence begins to suggest that appellant had abandoned his midnight threat to Cruz or Martinez.

Due to the foregoing circumstances and authority, we cannot say that the trial court abused its discretion in refusing to instruct the jury on self-defense. And, having overruled each issue, we affirm the trial court's judgment.

Per Curiam

Do not publish.