**Reversed, Remanded, and Opinion Filed July 2, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00129-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**BHAVESH G. PATEL, Appellee**

**On Appeal from the County Criminal Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. MA18-35489-E**

## OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Partida-Kipness

Appellee Bhavesh G. Patel was charged via complaint and information with driving while intoxicated (DWI) with a blood–alcohol concentration (BAC) of 0.15 or more. *See* TEX. PENAL CODE §§ 49.04(a), (d). Patel moved to suppress the results of the State's analysis of his blood. The trial court granted Patel's motion and ordered the results of the blood analysis excluded. The State appeals that decision. We reverse the trial court's order suppressing the results of Patel's blood analysis and remand the case for further proceedings.

# BACKGROUND

On October 6, 2018, at approximately 2:39 a.m., Officer Darryl Moore observed Patel fail to stop at a stop sign and then maneuver his vehicle across three lanes without applying his turn signal. Officer Moore conducted a traffic stop. He believed Patel to be intoxicated because he smelled an odor of alcoholic beverage on Patel's breath, Patel's eyes were red, and Patel admitted to consuming three vodka sodas before driving. Patel failed three standardized field sobriety tests. Officer Moore determined Patel appeared to have lost the normal use of his mental and physical faculties and was intoxicated. He arrested Patel and provided the statutory warnings. When Patel refused to submit a blood specimen, Officer Moore executed an affidavit for search warrant to obtain a blood specimen from Patel. The magistrate issued a search warrant that provided in part:

> Whereas, the Affiant, whose name appears on the Affidavit attached hereto is a peace officer under the laws of Texas and did heretofore this day subscribed and swore to said affidavit before me, (which said Affidavit is here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this warrant) and whereas I find that the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief Affiant expresses herein and establishes the existence of proper grounds for the issuance of this Warrant:

> Now, therefore, you are commanded to take custody of the suspect and transport the suspect to a medical or jail facility in Dallas County, Texas where you shall search for, seize and maintain as evidence the property described in said Affidavit, to-wit: human blood from the body of the following described individual:

> [naming Patel and providing his race, sex, date of birth, driver's license number, height, weight, and hair color]

The warrant issued on October 6, 2018, at 4:38 a.m. and was to be executed within six hours of its issuance, rather than the standard three days:



According to the Specimen Routing Report, the blood specimen was drawn at 4:45 a.m. on October 6, 2018, and immediately submitted to the Southwestern Institute of Forensic Science (SWIFS) crime lab for analysis. On October 10, 2018, SWIFS tested the blood to determine its alcohol concentration. The lab issued a Toxicology Analysis Test Report dated October 12, 2018, showing appellee's blood had an alcohol concentration of 0.201 grams of alcohol per 100 milliliters of blood (+/-0.017 g/100 ml). Patel was charged with DWI with a blood–alcohol concentration greater than 0.15.

Patel sought to suppress the results of the blood analysis. Relying primarily on *State v. Martinez*, 570 S.W.3d 278 (Tex. Crim. App. 2019), Patel argued the search warrant allowed the State to seize his blood but did not allow the State to then analyze the blood. Patel maintained that analyzing his blood is a separate search requiring a second search warrant. He also asserted that a warrant authorizing a blood draw that fails to specify what type of analysis may be conducted on the blood specimen is an unlawful "general warrant." In the motion to suppress, Patel raised

no arguments regarding whether the warrant was timely executed or regarding a lack of warrant return.

In response, the State argued that the testing of Patel's blood was not a separate search and did not require a second search warrant. According to the State, Patel had no reasonable expectation of privacy against testing the blood because Patel's blood was legally seized under a valid search warrant. The State also maintained that *Martinez* is not controlling because *Martinez* did not address whether a person has a reasonable expectation of privacy in blood that has been drawn under a valid search warrant. Rather, *Martinez* addressed whether a reasonable expectation of privacy existed in blood that has been drawn, but not tested, for medical purposes.

At the suppression hearing, the parties stipulated to the facts surrounding the search warrant. The State offered the following evidence in support of the stipulation: the probable cause affidavit, the affidavit for search warrant with the accompanying search warrant, and the Toxicology Analysis Test Report from SWIFS. These were admitted without objection.

The parties then presented closing arguments to the trial court. Patel argued, as he did in his motion, that blood analysis is a separate search protected by the Fourth Amendment and, as such, required the State to obtain a separate search warrant to legally analyze the blood. The State responded that no additional warrant was required to test Patel's blood because blood analysis is not a separate search

when the blood is seized under a valid search warrant supported by probable cause. The State then explained *Martinez* is inapplicable because that case involved blood drawn initially for medical purposes, not blood drawn pursuant to a valid search warrant. The State also asked the trial court to consider persuasive authority from intermediate courts of appeals that have distinguished *Martinez* on grounds where, as here, the blood was initially seized pursuant to a valid search warrant for forensic purposes in a criminal DWI investigation. The State presented two such cases for the court's consideration: *Hyland v. State*, No. 13-16-00596-CR, 2019 WL 5609818 (Tex. App.—Corpus Christi–Edinburg Oct. 31, 2019) (mem. op., not designated for publication), *opinion withdrawn and superseded for publication,* 595 S.W.3d 256 (Tex. App.—Corpus Christi–Edinburg Nov. 21, 2019, no pet.), and *Crider v. State*, No. 04-18-00856-CR, 2019 WL 4178633, at *1 (Tex. App.—San Antonio Sept. 4, 2019) (mem. op., not designated for publication).[1] The trial judge distinguished *Hyland* as too speculative and refused to consider *Crider* because it was an unpublished opinion.

The trial judge orally granted the motion to suppress and made findings of fact and conclusions of law on the record. The judge found, in pertinent part, that Officer Moore executed a valid affidavit for search warrant and presented a search warrant to obtain Patel's blood. The trial judge concluded, however, that the search warrant

---

[1] The Texas Court of Criminal Appeals affirmed *Crider* during the pendency of this appeal. *Crider v. State*, 607 S.W.3d 305 (Tex. Crim. App. 2020), *cert. denied*, 141 S. Ct. 1384, 209 L. Ed. 2d 126 (2021).

was invalid because the State did not provide the court with the return and inventory, which she concluded was a violation of article 18.10 of the Texas Code of Criminal Procedure.

Although the trial judge found that she could not determine when the search warrant was executed without a return and inventory, she also made findings bearing on the time of execution. First, she found that the blood specimen was transferred to SWIFS at 2:06 p.m. on October 6, 2018, which is "obviously, more than six hours after the stated execution time limit in the warrant." Then, while addressing "the *Martinez* issues" raised in Patel's motion, she concluded that the search warrant was "limited to three days" because the code of criminal procedure "is silent with regard to expanding time for the execution of a search warrant regarding the analysis of a person's blood for alcohol or drug intoxicants." She then concluded that the Code's silence on that issue required her to find that the blood analysis was untimely and must be suppressed:

> As I have stated previously on the record, this is a black hole in the law which the Legislature could have taken up this last term and fixed. The *Martinez* case is not on point, but it has brought to everyone's attention this privacy right that everyone enjoys. I am certain that at the next Legislative session, our legislators, in all their infinite wisdom, will correct this problem. However, because the Code remains silent, this Court cannot create law where it doesn't exist.

Although not cited by the trial judge, her analysis indicates that she concluded this warrant fell within article 18.07(a)(3) of the code of criminal procedure, which provides that search warrants "issued for a purpose other than" the two legislative

–6–

carve-outs of articles 18.07(a)(1) and 18.07(a)(2) must be executed within three whole days exclusive of the day of its issuance and the day of its execution. TEX. CODE CRIM. PROC. art. 18.07(a)(3). The record shows SWIFS analyzed the blood specimen on October 10, 2018, which was four days after being drawn. The trial court, therefore, concluded that the State did not timely execute the warrant here because the blood was not analyzed within three days of issuance as set out in article 18.07(a)(3). *Id.* The trial court made no findings or conclusions regarding whether a separate search warrant was required to test Patel's blood. The trial court's subsequent written order granting the motion does not state the grounds upon which the motion was granted.

The State filed a request for written findings of fact and conclusions of law. The State also filed an objection to the trial court's oral findings and requested that the trial court reconsider its ruling and tailor its findings to only the issues presented in the motion to suppress and litigated at the hearing. The State took issue with the trial court's conclusion that the search warrant was invalid and argued that such a ruling was beyond the permissible scope of the court's inquiry because Patel stipulated to the validity of the search warrant. The trial court issued no written findings of fact or conclusions of law and did not reconsider its ruling. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *State v. Staton*, 599 S.W.3d 614, 616 (Tex. App.—Dallas 2020, pet. ref'd). We give almost total deference to the trial court's determination of historical facts and review de novo the application of the law to the facts. *Ruiz*, 577 S.W.3d at 545. We view the record in the light most favorable to the trial court's ruling and uphold the ruling if it is supported by the record and is correct under any theory of the law applicable to the case. *Id.*

## ANALYSIS

On appeal, the State asks this Court to reverse the trial court's suppression order and remand the case to proceed under the information. We agree the trial court erred by suppressing the BAC analysis, reverse the suppression order, and remand for further proceedings.

## I. Grounds not raised in the motion to suppress

In its first, third, and fourth issues, the State argues that the trial court erred by granting the motion to suppress on grounds not raised by Patel in his motion to suppress. We agree. Those grounds did not provide a proper legal basis on which to suppress the blood analysis here.

## A.    Lack of notice to the State

The State has no burden at a pretrial suppression hearing until the defendant alleges a theory of suppression on which the State bears the burden of proof. *State v. Esparza*, 413 S.W.3d 81, 87–88 (Tex. Crim. App. 2013). While a trial court's ruling will be upheld on appeal if it is correct under any theory of law applicable to the case, unalleged theories on which the State would have a burden of proof are not "applicable to the case" and do not support affirmation of the ruling. *Id*. at 90 (inadmissibility of evidence under Rule 702 was not a theory of law applicable to the case because defendant did not raise theory in trial court and left the State without an adequate opportunity to develop a complete factual record on the coercion theory); *see also State v. Castanedanieto*, 607 S.W.3d 315, 329–30 (Tex. Crim. App. 2020) (same as to coercion theory not raised in trial court by defendant).

Here, Patel raised two legal grounds for suppression of the BAC results in his motion to suppress and at the hearing on the motion: that a second search warrant was required for the State to analyze the blood drawn pursuant to the first search warrant, and a warrant authorizing a blood draw that fails to specify what type of analysis may be conducted on the blood specimen is an unlawful "general warrant." The State, therefore, had notice that Patel wanted the blood–alcohol results suppressed because they were purportedly obtained by a warrantless search. But the trial court did not address that theory when it granted the motion to suppress. Instead, the trial court suppressed the BAC results on two grounds not asserted in the motion

–9–

and not argued during the hearing: that the search warrant was invalid because the State did not produce a return and inventory, and the BAC analysis was not completed within the period permitted for execution. Patel did not assert those grounds in his motion or at the motion hearing. Indeed, Patel conceded below that he was not contesting the blood draw.

Moreover, Patel said nothing in his motion or at the pretrial hearing that may reasonably be construed to be a request for suppression based on the lack of a return and inventory or untimely execution. The State, therefore, had no notice that Patel contended the BAC results should be suppressed because of a problem with the execution or return of the blood–draw warrant. As a result, the State's burden of production and persuasion with respect to such issues was never triggered. *See Castanedanieto*, 607 S.W.3d at 327–28, 330; *see also Esparza*, 413 S.W.3d at 87–88, 90. Further, the State did not have an adequate opportunity to develop a complete factual record with respect to the theories relied upon by the trial court in granting the motion to suppress. *See Esparza*, 413 S.W.3d at 90. Accordingly, neither of those grounds provided a proper legal basis on which to suppress the blood analysis here. We sustain the State's first issue.

## B. Return and inventory

In its third issue, the State argues the trial court's conclusion that the search warrant was invalid based on the lack of a return and inventory is contrary to the law. We agree.

–10–

Article 18.10 of the code of criminal procedure governs the officer's return of the search warrant to the issuing magistrate and possession of the seized property:

> Not later than three whole days after executing a search warrant, the officer shall return the search warrant. Upon returning the search warrant, the officer shall state on the back of the same, or on some paper attached to it, the manner in which the warrant has been executed. The officer shall also deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant. ***The failure of an officer to make a timely return of an executed search warrant or to submit an inventory of the property*** taken into the officer's possession under the warrant ***does not bar the admission of evidence under Article 38.23***. . . .

TEX. CODE CRIM. PROC. art. 18.10 (emphasis added). Article 38.23(a) requires the exclusion of evidence "obtained . . . in violation of any provisions of the Constitution or laws of the State of Texas . . . ." TEX. CODE CRIM. PROC. art. 38.23(a).

By its plain terms, article 18.10 provides that a failure to make a timely return or submit an inventory does not bar admission of evidence seized pursuant to the search warrant. TEX. CODE CRIM. PROC. art. 18.10. Moreover, the court of criminal appeals has determined that "Article 38.23 does not apply to violations of Article 18.10." *Martinez v. State*, 17 S.W.3d 677, 685–86 (Tex. Crim. App. 2000). This is consistent with the two legal objectives of search warrants, which "are to ensure there is adequate probable cause to search and to prevent a mistaken execution of the warrant against an innocent third party." *Green v. State*, 799 S.W.2d 756, 757 (Tex. Crim. App. 1990). "[P]urely *technical* discrepancies in dates or times do not automatically vitiate the validity of search or arrest warrants." *Id.* at 759 (emphasis

–11–

in original). We, therefore, "review technical discrepancies with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant" because "[t]hese objectives are not furthered by rigid application of the rules concerning warrants; . . ." *Id.* at 757–58.

Further, failure to make a return will not vitiate the warrant absent a showing of prejudice. *State v. Stanton*, No. 05-20-00427-CR, 2021 WL 1152901, at *4 (Tex. App.—Dallas Mar. 26, 2021, no pet. h.) (mem. op., not designated for publication); *Martinez v. State*, No. 05-98-00407-CR, 1999 WL 134727, at *2 (Tex. App.—Dallas Mar. 15, 1999, pet. ref'd) (not designated for publication). The record before us does not show that Patel suffered prejudice as a result of the officer's alleged failure to give the return to the magistrate, nor did Patel allege harm or prejudice in the trial court.

Applying these established rules, we conclude the lack of a return and inventory did not invalidate the search warrant. Thus, the lack of a return is not a theory of law on which the trial court could grant Patel's motion. We sustain the State's third issue.

### C.    Time for execution of the warrant

Similarly, the trial court's determination that the BAC analysis was untimely because it was not completed within the six-hour period allotted for execution of the warrant is contrary to the law.

After the trial court issued its order and the State filed this appeal, this Court considered and rejected the argument Patel asserts here that article 18.07 of the code of criminal procedure governs the time for testing blood as well as the time for seizing it. *See State v. Jones*, 608 S.W.3d 262, 264–65 (Tex. App.—Dallas 2020, pet. ref'd). In *Jones*, we explained:

> [Article 18.07] merely provides the deadlines for seizing the evidence, not analyzing it. It specifies that with certain exceptions not applicable here, a warrant must be *executed* within three days of its issuance, exclusive of the day of issuance and the day of execution. The execution of the warrant is the blood draw, not the testing and/or analysis of that blood. Our opinion in *Staton* says nothing about imposing a deadline for the testing and/or analysis of blood, much less applying the statutory deadline of article 18.07(a)(3) to the testing and/or analysis of the blood, and we decline Jones's invitation to create new law on this subject.

608 S.W.3d at 264–65 (emphasis in original) (internal citation omitted). We have, thus, rejected Patel's argument that the results of the analysis were illegally obtained because the analysis occurred outside of the warrant's execution period.

The warrant at issue here was executed when the blood was drawn, which was within ten minutes of the warrant being issued. It was, therefore, executed within the six-hour execution window set out in the warrant regardless of when the blood specimen was tested. We sustain the State's fourth issue.

## II.     Separate search warrant for blood analysis

We turn now to the argument raised by Patel in his motion; that a second search warrant was required to conduct a BAC analysis of the blood drawn pursuant to the first warrant. The Court of Criminal Appeals and this Court have rejected

–13–

Patel's argument, specifically holding that forensic blood analysis is not a separate search and does not require a separate warrant when the blood is collected pursuant to a valid search warrant. *Crider*, 607 S.W.3d at 308; *Jones*, 608 S.W.3d at 264; *Staton*, 599 S.W.3d at 617. To the extent the trial court granted the motion on that ground, the suppression order must be reversed.

The *Crider* court rejected the argument that a second search warrant is required to perform analysis of blood drawn pursuant to a search warrant and held as follows:

> Here, the State obtained the blood sample by way of a magistrate's determination that probable cause existed to justify its seizure—for the explicit purpose of determining its evidentiary value to prove the offense of driving while intoxicated. That magistrate's determination was sufficient in this case to justify the chemical testing of the blood. And this is so, we hold, even if the warrant itself did not expressly authorize the chemical testing on its face.

*Crider*, 607 S.W.3d at 308. This Court reached the same conclusion in opinions issued before the Court of Criminal Appeals issued its opinion in *Crider*. *See, e.g.*, *Jones*, 608 S.W.3d at 264–65 (a second warrant is not mandated to test a blood sample obtained initially through a valid warrant); *Staton*, 599 S.W.3d at 61718 (concluding *Martinez* did not apply to blood draw pursuant to warrant because it dealt with a different question—i.e., whether "an individual has an expectation of privacy in blood previously drawn for purposes other than police testing.").

Here, as in *Crider*, *Jones*, and *Staton*, the magistrate's determination that probable cause existed to justify the seizure of the blood sample from Patel was also,

by its own account, sufficient to justify the chemical testing of the blood seized. *See Crider*, 607 S.W.3d at 308; *see also Jones*, 608 S.W.3d at 264–65; *Staton*, 599 S.W.3d at 618. Thus, an additional warrant expressly authorizing the testing of the blood seized was not required and its absence could not serve as a basis for suppressing the blood–analysis results. To the extent the trial court granted the motion to suppress on that basis, we sustain the State's second issue and reverse the trial court's suppression order.

## CONCLUSION

We conclude no legal bases support the trial court's suppression order. Accordingly, we sustain the State's appellate issues, reverse the order suppressing the BAC analysis, and remand to the trial court for further proceedings.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Publish
TEX. R. APP. P. 47.2(b).
200129F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-20-00129-CR      V.

BHAVESH G. PATEL, Appellee

On Appeal from the County Criminal Court No. 4, Dallas County, Texas Trial Court Cause No. MA18-35489-E.

Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Goldstein participating.

Based on the Court's opinion of this date, the trial court's order granting appellee's motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 2nd day of July 2021.