**Motion for En Banc Reconsideration Granted; En Banc Majority and Dissenting Opinions of December 16, 2021 Withdrawn; Affirmed in Part, Reversed and Remanded in Part, and Substitute En Banc Majority and Dissenting Opinions filed February 24, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00839-CR

## ALAN WILLIAM NULL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 209th District Court
### Harris County, Texas
### Trial Court Cause No. 1443617

## SUBSTITUTE EN BANC DISSENTING OPINION

I disagree with the majority's decision to grant en banc consideration, and with the majority's merits analysis of appellant's reliability complaint.

## I.  The standard for en banc consideration has not been met.

The sole difference between the panel majority opinion and the new en banc majority opinion is in the treatment of the reliability complaint, which was directly raised in appellant's eighth and ninth issues, and indirectly raised in his tenth and eleventh issues. This complaint does not warrant the attention of the full court. The majority has criticized the panel for "creat[ing] discord in this Court's decisions concerning expert testimony," but the panel opinion was fully consistent with the decisions from the Court of Criminal Appeals. The majority has also criticized the panel for taking judicial notice about the validity of DNA analysis, but there is nothing even remotely extraordinary about recognizing the validity of that field, which is the gold standard of forensic science. Because no conflicts or extraordinary circumstances were presented, the majority should have denied appellant's motion for en banc consideration. *See* Tex. R. App. P. 41.2(c) ("En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration.").

## II.  The majority's merits analysis is not supported by any relevant authority.

The State had no burden to demonstrate that its scientific evidence was reliable as a predicate to admission unless and until appellant, as the opponent of that evidence, raised an objection under Rule 702 of the Texas Rules of Evidence. *See State v. Esparza*, 413 S.W.3d 81, 86 (Tex. Crim. App. 2013). Because appellant raised such an objection on two separate occasions, the State was required to show three separate criteria: (1) the underlying scientific theory was valid, (2) the technique applying that theory was valid, and (3) the technique was properly applied on the occasion in question. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

2

In three separate points, the majority concludes that the State failed to satisfy its evidentiary burden. Each of those points can be swept aside for the following reasons.

**The First Point: Personal Knowledge.** The majority starts off by concluding that the evidence here is unreliable because the State did not establish that Symonds had personal knowledge of the technique that was applied at Bode. The majority relies on a string of cases—*Hines v. State*, 38 S.W.3d 805 (Tex. App.—Houston [14th Dist.] 2001, no pet.), *Ashby v. State*, 527 S.W.3d 356 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd), *Wooten v. State*, 267 S.W.3d 289 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd), and *In re S.E.W.*, 168 S.W.3d 875 (Tex. App.—Dallas 2005, no pet.)—but none of those cases holds that personal knowledge is essential to establishing reliability.

Nor could they. Our evidentiary rules do not require personal knowledge. *See* Tex. R. Evid. 703 (providing that an expert may form an opinion based on facts or data that the expert "has been made aware of, reviewed, or personally observed"). Moreover, the Court of Criminal Appeals recently held that an expert's lack of personal knowledge did not render his testimony unreliable. *See Molina v. State*, 632 S.W.3d 539, 546 (Tex. Crim. App. 2021). The majority errs by not applying that authority, especially when it was decided under facts that are virtually identical to this case (as discussed further below).

**The Second Point: The Expert's Employer.** The majority's next point is related to its first, and relies entirely on *Dreyer v. State*, No. 09-09-00422-CR, 2011 WL 193494 (Tex. App.—Beaumont Jan. 19, 2011, no pet.) (mem. op., not designated for publication). The DNA expert there did not perform any of the laboratory work, but she worked in the same laboratory and performed the DNA comparison, and the court of appeals determined that the trial court did not abuse its

discretion by concluding that her testimony was reliable. *Id*. at *4–5. The majority seems to believe that *Dreyer* establishes a minimum standard for reliability, which the current case fails to meet because Symonds did not work at Bode, but *Dreyer* does not establish that purported standard. Nor would it matter otherwise because *Dreyer* is unpublished and has no precedential value. *See* Tex. R. App. P. 47.7(a).

**The Third Point: The Confrontation Clause.** The majority finally concludes that the State failed to meet its burden of proof because Symonds was merely a surrogate witness for the non-testifying analyst at Bode. The majority defends this point with citations to *Paredes v. State*, 462 S.W.3d 510 (Tex. Crim. App. 2015) and other authorities concerning the Confrontation Clause. That entire line of reasoning is inappropriate. Appellant waived any argument under the Confrontation Clause by not raising one in his appellate brief, and even if he had raised such an argument, it would fail on the merits. Just like the expert in *Paredes*, Symonds would not be considered a surrogate witness because she was not sponsoring the lab report from Bode, which was never admitted into evidence (although it was included in the appellate record). *Id.* at 518. Instead, Symonds relied on the raw data from Bode and provided her own conclusions, which appellant was able to subject to cross-examination. There is no issue under the Confrontation Clause that even tangentially affects the reliability of the State's evidence. *See Molina*, 632 S.W.3d at 546 (concluding that a DNA profile generated by a third-party laboratory was not testimonial, that the DNA expert who conducted the comparison was not merely a surrogate witness for the non-testifying analysts, and that there was no violation of the Confrontation Clause).

**III.  This court should overrule appellant's reliability complaint.**

The question for this court to decide is whether the State's DNA evidence was actually reliable. *See Jackson v. State*, 17 S.W.3d 664, 672 (Tex. Crim. App. 2000). The answer to that question is "yes," because all three *Kelly* criteria were satisfied.

Appellant challenges the first criterion because he asserts that the State produced no testimony regarding the validity of DNA analysis. Appellant never made that challenge with a specific objection in the trial court, but even if he had, his argument would fail because this court may take judicial notice that DNA analysis has already been widely accepted by other courts. *See Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003) (per curiam) ("Once a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert/Kelly* hearings, subsequent courts may take judicial notice of the scientific validity (or invalidity) of that scientific theory based upon the process, materials, and evidence produced in those prior hearings."); *see also Maryland v. King*, 569 U.S. 435, 442 (2013) (recognizing the significance of DNA technology).

Appellant challenges the second criterion because he asserts that the State similarly failed to establish the validity of the technique applying the scientific theory. This challenge was not raised in the trial court either. In any event, the technique employed in this case was "STR," or short tandem repeats, and this court may take judicial notice that this technique is also valid. *See Reese v. State*, Nos. 14-02-00847-CR & 14-02-00848-CR, 2003 WL 22303760, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 9, 2003, pet. ref'd) (mem. op., not designated for publication) (discussing evidence developed at a hearing concerning short tandem repeats, including "world-wide acceptance of STR DNA testing").

As for the third criterion, appellant challenges whether the State proved that the technique was applied correctly. Appellant made this challenge in the trial court, insofar as he argued that Symonds had no actual knowledge of how the DNA analysis was conducted by Bode. Nevertheless, the complaint must fail because there was uncontroverted evidence that Bode correctly performed its DNA analysis.

Symonds testified that Bode was an accredited laboratory, and that based on certain on-site visits, a review of its operating procedures, and its history of compliance, Bode was outsourced to assist in clearing a backlog of untested rape kits. As for the testing in this particular case, Symonds said that she was not physically present at Bode when the testing occurred, but she went through a checklist to ensure that Bode followed the necessary steps to establishing a DNA profile. She confirmed that all quality control signatures were in place and that Bode's results stayed within acceptable ranges. She clarified that these quality controls are implemented "to make sure that if something did go wrong, we would be able to detect that." And she plainly implied that nothing actually went wrong because Bode successfully extracted from the rape kit a "useable profile."

This testimony is indistinguishable from the testimony in *Molina v. State*, 632 S.W.3d 539 (Tex. Crim. App. 2021), a recent case from the Court of Criminal Appeals that also examined the reliability of DNA evidence. There, like here, a rape kit was sent to a third-party laboratory, which generated a DNA profile, but the laboratory did not perform any sort of comparative analysis. *Id.* at 540. Later, an analyst from a separate laboratory compared the previously generated DNA profile to a known sample of DNA extracted from a buccal swab of the defendant. *Id.* at 541–42. The analyst testified that his evidence was reliable because if the third-party laboratory "had not gathered this data in a scientifically reliable manner," then he "would not expect a profile to be generated." *Id.* at 545. In the course of considering

an argument under the Confrontation Clause, the Court of Criminal Appeals rejected a related argument that the evidence was scientifically unreliable because the analyst lacked personal knowledge of how the original DNA profile was generated. *Id.* at 546. The Court explained:

> [The analyst] gave testimony . . . that an important control in the process is that, if there is an error processing evidence, no profile suitable for comparison would be generated, and that in no case would a processing error result in another person's profile being mistakenly generated. As a result, we conclude that [the analyst's] lack of personal knowledge about the quality control protocols in place at [the third-party laboratory] does not change the outcome.

*Id.* Because there is no material difference in the testimony provided by Symonds, this court should likewise hold that the State's evidence was scientifically reliable.

## IV. The majority's opinion will sow confusion in the lower courts.

There is a well-known backlog of untested rape kits, both in Harris County and across the state at large. And as the evidence in this case and others have demonstrated, counties have been outsourcing the testing of those rape kits to third-party laboratories.

What are trial courts supposed to do in future prosecutions when the State offers expert opinion testimony that is based on one of those outsourced test results? The majority appears to be holding that the opinion must be excluded as unreliable unless the sponsoring witness performed both the testing and the comparative analysis herself. Yet the First Court of Appeals, with which we share jurisdiction, has already determined that the opinion can be reliable even if the sponsoring witness did not personally perform the testing, and the Court of Criminal Appeals affirmed that holding. *See Molina v. State*, 587 S.W.3d 100, 108 (Tex. App.—Houston [1st Dist.] 2019) (rejecting a challenge that the opinion should be excluded and citing evidence that no DNA profile would have been generated at all if the data had been

collected in a manner that was scientifically unreliable), *aff'd*, 632 S.W.3d 539 (Tex. Crim. App. 2021). Trial courts cannot function among this irreconcilable jurisprudence. The conflict is untenable.

I would overrule appellant's eighth and ninth issues, where he raised his reliability complaint, as well as his tenth and eleventh issues, which depended upon a determination that the evidence was unreliable, and I would affirm the trial court's judgment in its entirety. Because the majority does not, I respectfully dissent.


/s/  Tracy Christopher
     Chief Justice


En banc Court consists of Chief Justice Christopher and Justices Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, Poissant, and Wilson. Justice Hassan authored the Substitute En Banc Majority Opinion, which Justices Bourliot, Zimmerer, Spain, and Poissant joined. Chief Justice Christopher authored the Substitute En Banc Dissenting Opinion, which Justices Wise, Jewell, and Wilson joined.

Publish — Tex. R. App. P. 47.2(b).