# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00001-CR

---

### Stephen Lynn Jennings, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C-17-0982-SB, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Stephen Lynn Jennings appeals his convictions, after a jury trial, for capital murder, aggravated kidnapping, and tampering with physical evidence (a human corpse). *See* Tex. Penal Code §§ 19.03, 20.04, 37.09. He was sentenced for the three offenses to: life in prison without parole, life in prison, and 20 years. In three appellate issues, he challenges the admission of certain exhibits into evidence. We affirm.

### BACKGROUND

The State's theory of the offenses involved a plot by Jennings; his then-wife, Kristen Jennings; and others to get the victim, Eric Torrez, to drive from Abilene, where he lived and worked, to San Angelo, where Jennings lived. Torrez was Kristen's ex-husband, and the two had two children together, one of whom still lived with Torrez. The State's theory was that Jennings wanted to help Kristen get that child back by luring Torrez away from Abilene so that

Kristen could pick the child up and take her home to San Angelo. The plot involved Jennings pretending to be a potential customer for Torrez's business named "Daryl" to lure Torrez to Jennings's home on Duckworth Drive under the guise of bidding for a concrete job. Torrez traveled to Jennings's home, and while at the home, Jennings held Torrez at gunpoint in an empty bedroom and tried to obtain information about which daycare the child attended in Abilene. While no one saw Jennings shoot Torrez, Jennings eventually called Kristen and told her that Torrez was dead. Other evidence suggested that Jennings traveled outside of San Angelo to an empty field where Torrez's body was later recovered.

After Torrez had been missing for some time, investigators homed in on Jennings as a suspect and searched his home, truck, and cell phone. Searches of the home produced biological material that was to be sent to a Department of Public Safety (DPS) lab for DNA testing. And evidence obtained from Jennings's cell phone helped lead investigators to the empty field where Torrez's dead body was recovered.

Jennings retained an expert in DNA analysis. But because the DPS lab's impending testing of the biological material was likely to consume all the material so that nothing would be left for Jennings's expert to test, Jennings moved the trial court "to institute a protocol to protect the reliability of the evidence seized by the State." (Formatting altered.) The court granted his motion and required DPS personnel to take audiovisual recordings using multiple cameras of all testing performed on the biological material.

The court's order granting Jennings's motion was then the subject of an original proceeding brought by the district attorney in the Court of Criminal Appeals, styled *In re State ex rel. Best*. *See generally* 616 S.W.3d 594 (Tex. Crim. App. 2021). The high Court ruled, among other things, that the biological material to be tested at the DPS lab "was only potentially

2

exculpatory" and that in the discovery phase of Jennings's prosecution, the destruction of that material would not violate Jennings's due-process rights so long as the State did not destroy the material "in bad faith." *See id.* at 600–01. The Court also observed that Code of Criminal Procedure article 38.43 "provides a remedy to defendants when biological evidence is lost or destroyed as a result of DNA testing, namely: access to 'any bench notes prepared by the laboratory that are related to the testing of the evidence and the results of that testing.'" *Id.* at 601 (quoting Tex. Code Crim. Proc. art. 38.43(k)). The Court therefore ordered the trial court to rescind its order granting Jennings's motion for a DNA-testing protocol. *See id.*

At trial, the State offered evidence of the results of the DNA testing—Torrez's DNA was very likely present in Jennings's home. The State offered other testimony and exhibits tending to prove its theory of Jennings's offenses, including testimony by Jennings's accomplices in Torrez's kidnapping and murder. As relevant here, the State offered two exhibits of photos of Torrez's dead body when it was recovered. And it offered several exhibits of text messages from various people's cell phones.

Ultimately, the jury convicted Jennings of capital murder, aggravated kidnapping, and tampering with physical evidence (a human corpse). The trial court rendered judgment on the verdict, and Jennings now appeals.

## DISCUSSION

### I. Jennings has not preserved his complaint about the admission of certain exhibits of DNA-testing results.

In his first issue, Jennings maintains that the trial court abused its discretion by admitting certain exhibits showing the results of the DNA testing because the statutory scheme

3

governing biological evidence (Article 38.43) falls short of guaranteeing constitutional due process. But we conclude that Jennings has failed to preserve this complaint for review.

Preservation of error, because it "is a systemic requirement" of the court system, "must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties." *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). For an appellant to have preserved a complaint for appellate review, the appellant, among other requirements, must have presented argument to the trial court in support of a sufficiently specific complaint. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see also* Tex. R. App. P. 33.1(a)(1)(A) (requiring complaint to have been first made to trial court and to have "stated the grounds for the ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). "A general or imprecise objection" may preserve error but "only if the legal basis for the objection is *obvious* to the court and to opposing counsel." *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).

The complaint on appeal also must comport with the objection made in the trial court. *Yazdchi*, 428 S.W.3d at 844. Thus, an objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Even complaints of constitutional errors can be forfeited for failure to preserve. *Yazdchi*, 428 S.W.3d at 844; *Broxton*, 909 S.W.2d at 918.

When the State offered as evidence the exhibits of DNA-testing results that are the subject of Jennings's appellate issue, Jennings objected based on the constitutional right to effective assistance of counsel and on rights that he had raised in his July 27, 2018 "Motion for Court to Institute a Protocol to Protect the Reliability of the Evidence Seized by the State." (Formatting altered.) He said in his objection:

4

I would once again raise the objection that we originally raised back on July the 27th, 2018, in our motion for the Court to institute a protocol to protect the reliability of the evidence seized by the State, and that was based on the fact that the—the sum of the evidence that was going to be tested was going to be completely destroyed, in which then we would be prevented of retest—to retesting that. I do understand the position the Court of Criminal Appeals has said that Article 38.43(k), which deals with access—which deals with the testing in these types of cases, allows the defense attorney access to any bench notes that the—the—the lab technician or the expert would actually produce while he's doing his—his job, but I would like to present to the Court that that is not sufficient to protect the Sixth Amendment rights of my client to afford him effective assistance of counsel by physically preventing us from being able to retest some of the DA—DNA biological samples provided and which we anticipate this expert will testify to.

Jennings's legal theories for excluding the exhibits were thus (1) the Sixth Amendment right to effective assistance of counsel and (2) the contents of his July 27, 2018 motion.

First, the due-process clauses of the Constitution, from the Fifth and Fourteenth Amendments, differ from the Sixth Amendment. The latter protects the rights to a speedy and public trial, an impartial jury, trial in the state and district where the crime was committed, prior ascertainment of that district by law, being informed of the nature and cause of the accusation, confrontation of witnesses, compulsory process for favorable witnesses, and effective assistance of counsel. *See* U.S. Const. amend. VI; *see, e.g.*, *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 504–05 (Tex. Crim. App. 2011) (contrasting due-process rights with Sixth Amendment rights); *Pena v. State*, 285 S.W.3d 459, 462 n.3 (Tex. Crim. App. 2009) (same); *Diaz v. State*, 172 S.W.3d 668, 672 (Tex. App.—San Antonio 2005, no pet.) (same).[1] Jennings's reliance in the trial court

---

[1] *See also Zandbiglari v. State*, No. 03-98-00015-CR, 1999 WL 125411, at *2 (Tex. App.—Austin Mar. 11, 1999, pet. ref'd) (not designated for publication) ("[T]hough appellant has not presented a separate point of error raising a Fifth Amendment due process claim, he commingles a due process argument with his Sixth Amendment speedy trial argument in an apparent but useless attempt to enhance his speedy trial claim.").

on "Sixth Amendment . . . effective assistance of counsel" therefore did not preserve an appellate complaint that Article 38.43 does not protect due-process rights, which would purportedly make the exhibits inadmissible. *See Yazdchi*, 428 S.W.3d at 844 (requiring complaint on appeal to comport with complaint in trial court); *Traylor v. State*, 892 S.W.2d 447, 449 (Tex. App.—Beaumont 1995, pet. ref'd) (arguments on Sixth Amendment grounds do not raise complaints on due-process grounds).

This leaves only the reasserted contents of Jennings's July 27, 2018 motion as the basis for preserving a due-process evidence-admission appellate complaint. Yet the motion did not address admission of evidence; it addressed the handling of evidence by the State at the discovery phase in order to give the defendant a meaningful opportunity to prepare a defense. More specifically, the motion sought restrictions on the State's ability to test certain biological material because the testing would consume the material so that nothing would be left for Jennings's expert to test. For example, the motion asked that "safeguards be instituted to protect the integrity and reliability of the evidence" to protect Jennings's "fair or meaningful opportunity to develop and present a defense" and "due process rights." The motion did not address admission of evidence, so its global statements about due-process rights do not preserve Jennings's appellate complaint seeking to exclude the evidence. *See* Tex. R. App. P. 33.1(a)(1)(A) (requiring sufficient specificity of complaints); *Yazdchi*, 428 S.W.3d at 844 (requiring complaint on appeal to comport with complaint in trial court); *see also Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (pre-trial motion on one topic "was not sufficiently specific to preserve any error regarding" separate topic raised at trial); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("global

6

statements" in motion merely citing authorities but not tying them to anything specific did not preserve appellate complaint).

We thus do not reach Jennings's first issue.

## II. The trial court did not abuse its discretion by admitting into evidence two photos of Torrez's dead body over a Rule 403 objection.

In his second issue, Jennings maintains that the trial court should have excluded two photos of Torrez's body under Rule of Evidence 403. We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision lies outside the "zone of reasonable disagreement." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). Our review must focus on the record before the trial court when it admitted the evidence at issue. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). And we must affirm the court on any legal theory supported by the record. *See State v. Esparza*, 413 S.W.3d 81, 85 & n.17 (Tex. Crim. App. 2013); *Carrasco*, 154 S.W.3d at 129; *Miles v. State*, 488 S.W.2d 790, 792 (Tex. Crim. App. 1972).

Under Rule 403, if the probative value of relevant evidence is substantially outweighed by certain dangers, then the evidence is inadmissible. *Gonzalez*, 544 S.W.3d at 371. The dangers include "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Unfair prejudice involves "an undue tendency to suggest an improper basis for reaching a decision," *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000), and often involves decisions based on emotion, *see Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Gittens v. State*, 560 S.W.3d 725, 732 (Tex. App.—San Antonio 2018, pet. ref'd).

7

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). The rule calls for a balancing test, under which the analysis includes, but need not be limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for it. *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). Specifically for the admission of photos like those here, we consider:

> the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment.

*Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

Probative value is "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item." *Davis*, 329 S.W.3d at 806. "'Misleading the jury' means a risk that the evidence would be given undue weight for reasons other than emotional ones; an example is scientific evidence that a jury is not equipped to judge." *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022). Ultimately, Rule 403 balancing "is always slanted" in favor of admissibility. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

We first apply the *Shuffield* photo factors and note that many favor admission. Only two such photos were admitted, they were roughly five inches by seven inches, the body was not naked, and nothing suggests that "the body ha[d] been altered since the crime in some way that

might enhance the gruesomeness of the photograph to the appellant's detriment." *See* 189 S.W.3d at 787. Specifically about their purported gruesomeness, the photos show deterioration, desiccation, and decay of the body after it had lain in the open during a Texas summer for about two weeks. Even so, the photos are "no more gruesome than the crime scene itself as it was found by the police." *See id.*; *see also Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) ("[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome."). The only *Shuffield* factors that may undermine admissibility here are that the photos are in color and somewhat detailed. But in all, the *Shuffield* factors here slant in favor of admissibility.

The same is true of the more general Rule 403 factors. Under the first and fourth factors, the photos had probative value for the State because it was prosecuting Jennings not only for capital murder and kidnapping but also for intentionally or knowingly altering or concealing Torrez's human corpse with intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense of kidnapping Torrez, *see* Tex. Penal Code § 37.09. No witness testified to seeing Jennings shoot Torrez or later concealing his body in the empty field. The State thus needed to prove that series of events—its theory of the case—by resort to circumstantial evidence like the photos at issue. The photos help show the gunshot wound to the head, *see Gallo*, 239 S.W.3d at 763 (photos admissible over Rule 403 objection and despite their showing changes to body not attributable to defendant in part because photos "were highly probative to show the full extent of the injuries appellant inflicted on the victim"); the scene, and the orientation within the scene, of the concealment of the body; and why other evidence,

9

about location data placing Jennings near the empty field depicted in the photos, was important. Similarly, because much of the State's case rested on testimony by Jennings's accomplices, the State needed evidence corroborating the accomplices' testimony, *see* Tex. Code Crim. Proc. art. 38.14, and the photos helped do just that. The first and fourth factors thus favor admissibility.

Under the second factor, we view our discussion of the photos' purported gruesomeness as relevant. We also observe that "[t]he photographs 'are not, in our estimation, so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them.'" *See Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992) (quoting *Fuller v. State*, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 301 (Tex. Crim. App. 1993) (op. on reh'g)). We thus conclude that this factor favors admissibility.

Under the final, time factor, the record shows that the State spent roughly just a few questions asking a witness about what the photos show and roughly just a few minutes publishing the photos to the jury. Jennings does not argue that the State's development of this evidence took an inordinate amount of time. This factor is, at best for Jennings, neutral.

Under all the factors together, with none disfavoring admission of the photos, we conclude that the trial court acted within its discretion to admit the photos because the purported Rule 403 dangers raised by Jennings did not substantially outweigh the probative value of the photos. We overrule Jennings's second issue.

### III.   We overrule Jennings's complaint about admitting into evidence exhibits of text messages over a hearsay objection, and the authentication complaint is not preserved.

In his third issue, Jennings maintains that the trial court abused its discretion by admitting four exhibits showing pictures of text messages that were purportedly between Torrez

10

and Jennings and part of the plot to lure Torrez to San Angelo. Jennings argues that the exhibits were hearsay and not authenticated. We do not reach the authentication portion of this issue because Jennings raised no authentication objection to the exhibits at trial.[2] *See* Tex. R. App. P. 33.1(a)(1).

As for the hearsay portion of this issue, Jennings is challenging the contents of State's exhibits 167, 168, 169, and 170. He challenges no other exhibit. Yet the contents of Exhibits 167, 168, and 169 were elsewhere admitted into evidence as part of State's exhibits 139 and 139-A, each from a digital forensic analysis of Torrez's cell phone. Therefore, even if we agreed with Jennings that admitting Exhibits 167, 168, and 169 was an abuse of discretion, any such abuse of discretion would be harmless because Jennings has not also challenged the admission of Exhibits 139 and 139-A. *See* Tex. R. App. P. 44.2(b) (non-constitutional error leads to reversal only when substantial rights of defendant are affected); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1971) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."); *see also Compton v. State*, 666 S.W.3d 685, 722 (Tex. Crim. App. 2023) (admission of evidence was harmless in part because other, unchallenged evidence supplied same "gist" as that supplied by evidence that appellant challenged); *Nonn v. State*, 117 S.W.3d 874, 883 (Tex. Crim. App. 2003) (admission of evidence was harmless in part because other, unchallenged evidence "contained essentially the same information"). We overrule this part of the hearsay complaint.

---

[2] He raised only a hearsay objection, telling the trial court, "Your Honor, the only objection I have is to hearsay." When the trial court then instructed the State to lay more foundation for the exhibits, Jennings objected to one of the foundation questions as inviting speculation by the witness. But when the State reoffered the exhibits, Jennings reiterated only his hearsay objection.

11

All that's left is a hearsay challenge to the contents of Exhibit 170. Its contents show the following text-message exchange between a contact that the phone depicted identifies as "Maybe: Daryl" and Torrez:

[Maybe: Daryl:] I've got to get electrical inspection for the [L]ipan house.

[Torrez:] Just need an address

[Maybe: Daryl:] Let me ask David the house number bud. He's talking to the inspection guy right now. I'm trying to hurry.

[Torrez:] Ok [contents illegible]

[Torrez:] Well I'm in town

[Maybe: Daryl:] We are heading to Duckworth and about there. [I]t's 7481. 4th house on the left. You'll see a white 4 door truck backed under the car port. The door under the car p[o]rt is the door we go in.

[Torrez:] Ok

Because we must affirm the trial court's ruling on any legal theory supported by the record, *see Esparza*, 413 S.W.3d at 85 & n.17; *Carrasco*, 154 S.W.3d at 129; *Miles*, 488 S.W.2d at 792, we observe that the court could have admitted these statements as not being offered for their truth, *see* Tex. R. Evid. 801(d)(2) (definition of "hearsay" depends on challenged statement's being offered for "the truth of the matter asserted in the statement"). The State did not need to prove, for example, that an electrical inspection was to be performed somewhere or that a "Daryl" was going to 7481 Duckworth Road in San Angelo. The statements could have been offered instead for the fact that someone, Jennings, was communicating with Torrez to induce him to drive to San Angelo—a statement nowhere made in the contents of Exhibit 170. We thus overrule the rest of Jennings's third issue.

**CONCLUSION**

We affirm the trial court's judgments of conviction.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Theofanis

Affirmed

Filed:   November 21, 2023

Do Not Publish